## Appeal of the City of Scranton School District.

1. If an Act regulating the affairs of counties, cities, townships, wards, boroughs, or school districts, either produces or may produce local results, it offends against § 7, Article III. of the Constitution, and is therefore void.

2. The first five sections of the Act of March 18th, 1875 (P. L. 15), entitled a supplement to an Act dividing cities into three classes, etc., which provide, *inter alia*, for the assessment, levy and collection of all taxes authorized to be collected in said cities, and to which by the proviso of the fifth section no city of the third class shall become subject until they are accepted by ordinance of the councils, approved by the Mayor, are thus limited to the one or more cities that accept them. They are therefore local, and in conflict with § 7, Article III. of the Constitution.

February 25th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas of *Lackawanna county*, in equity: Of January Term 1886, No. 342.

This was an appeal by the city of Scranton School District and of P. J. Ruane, treasurer of said district, from the decree of said Court, enjoining them by perpetual injunction from collecting a full rate school tax upon third class property of the plaintiff, The Lackawanna Iron and Coal Company.

The plaintiff's bill was substantially as follows:

1. The Lackawanna Iron and Coal Company is a citizen and taxpayer of the city of Scranton.

2. The city of Scranton was incorporated by an Act of Assembly approved 23d April, 1866, and various supplements.

3. The passage by the legislature of the Act dividing cities into three classes, approved 23d May, 1874, P. L., 230.

4. The passage by the legislature of the supplement to said Act, approved 18th March, 1875, P. L., 15.

5. The passage by the city council on the 16th March, 1877, of an ordinance entitled "An ordinance adopting the provisions of the Act of Assembly entitled 'An Act dividing the cities of this State into three classes, etc., and providing for the incorporation and government of cities of the third class,' approved May 23d, 1874."

6. The issuance by the Governor of his certificate and the recording thereof on the 29th of August, 1877.

7. That on March 16th, 1877, Scranton contained a population of over 30.000 and less than 100,000.

8. That the complainant is the owner of seventy-five acres of unimproved land in the Fifteenth ward of said city, which is assessed by the assessing authorities of said city at the last triennial assessment as third class property, and valued at $7,167, and that such is the adjusted valuation for city purposes.

9. That the same property is assessed by the county without classification, for county purposes at $5,625.

10. That it is provided by said Act of 1875 as follows: "In all cities of the third class, all real estate and the improvements thereon shall, for taxable purposes, be classified and arranged in three classes," and "all taxes authorized to be collected in said cities, whether for general or special purposes of such city of the third class, shall be assessed, levied and collected as follows: Upon property of the first class a full rate, and upon property of the second class a two thirds rate, and upon property of the third class a one half rate."

11. That the city of Scranton School District has levied a tax of ten mills on the dollar for the year 1885, of the adjusted valuation of said company's said property, at a full rate, without regard to the classification of said property, and

3 AMERMAN—12

through its treasurer, P. J. Ruane, is now trying to collect a full rate against said property, and to impose a penalty of five per cent. additional if the same is not paid by September, 1st, 1885.

12. The levy of a one half mill sinking fund tax at a full rate.

13. That the school tax attempted to be collected of complainant amounts to $71.69, and the sinking fund tax to $3.59, while in truth and in fact and according to law the district is only entitled to collect one half of said amount, and that the other half thereof is illegal and void, as complainants verily believe.

Your orator therefore prays your Honors to restrain the defendants by temporary injunction from collecting said tax so levied as aforesaid, at least as to one half part thereof, and thereafter, upon proper showing, to make said injunction perpetual, and for such other relief in the premises as to your Honors may seem best.

The defendant's answer was substantially as follows:

1. We admit the fact alleged in the first paragraph of plaintiff's bill of complaint.

2. We admit the facts alleged in the second paragraph of said bill, and in further answer thereto say that by section 6, of an Act entitled, "a supplement to an Act to incorporate the city of Scranton, extending and defining the powers of said city," approved March 30th, 1867, it was *inter alia* enacted that "all taxes levied and collected within said city, for poor, county, school, special, or to pay any indebtedness due by any portion of the territory comprising said city, shall be levied upon the adjusted valuation made for city purposes."

3. We admit the facts alleged in the third, fifth, sixth and seventh paragraphs of said bill and in further answer thereto, say that on the 23d day of May, 1874, the city of Scranton contained a population less than one hundred thousand, and exceeding ten thousand, and was by said Act of 1874 constituted a city of the third class.

4. We admit the facts alleged in the fourth and tenth paragraphs of said bill, and in further answer thereto say that the first five sections of said Act of 1875, and the provisions of said five sections are coupled with and subject to the following proviso, which is part thereof, viz:

"Provided, that no city of the third class, nor any city of less population than ten thousand inhabitants, heretofore incorporated, shall become subject to the foregoing provisions of this Act, until the same are accepted by an ordinance duly passed by a majority of the members elected to each branch thereof voting in favor of the same, and approved by the

mayor; and all Acts or parts of Acts inconsistent herewith are hereby repealed."

And in further answer to said bill we say that we deny that any of the provisions of the first five sections of said Act of 1875 have ever been accepted by any ordinance passed and approved by the authorities of said city as required by said proviso. We also deny that said provisions were accepted by the ordinance of March 16th, 1877, set forth in said bill. We also deny that the taxes mentioned or intended by said Act of 1875 include school taxes. And in further answer to said bill we are informed, advised and believe that the provisions of the first five sections of said Act of 1875 are unconstitutional and void.

5. We admit the facts alleged in the eighth, ninth, eleventh and twelfth paragraphs of said bill. But we deny the relevancy of the facts alleged in said ninth paragraph, and in further answer to said bill we say that said ten mill tax was levied for school purposes and said one half mill tax was levied to provide for the payment of the interest and the liquidation of the principal of certain indebtedness of said school district. We admit that both of said taxes were levied on the adjusted valuation of plaintiff's said property made for city purposes.

6. We admit as alleged in paragraph thirteen of said bill that the school tax which we are attempting to collect of said plaintiff amounts to the sum of $71.67, and the tax levied to provide for the payment of the interest and the liquidation of the principal of the indebtedness of said school district amounts to only $3.59, but we deny that in truth or in fact, or according to law, we are entitled to collect only one half of said amounts, or that any part of said tax is illegal or void.

7. We deny each and every of the allegations and statements contained in said bill which we do not expressly admit in this our answer.

H. A. Knapp, Esq., was appointed Examiner and Master, who reported, *inter alia*, as follows:

1. The city of Scranton was duly incorporated by an Act of General Assembly of the Commonwealth of Pennsylvania, approved the 23d day of April, A. D. 1886.

2. On the 23d day of May, A. D. 1874, the said city of Scranton contained a population of more than ten thousand and less than one hundred thousand inhabitants; and on the 16th day of March, A. D. 1877, the said city of Scranton contained a population of more than thirty thousand and less than one hundred thousand inhabitants.

3. An ordinance, of which the following is a copy, was passed in the select council of said city of Scranton, on the 15th day of March, A. D. 1877, and in the common council of

said city on the 16th day of March, 1877, and was approved by the mayor on the 16th day of March, 1877, to wit:

Adopting the provisions of the Act of Assembly entitled: " An Act dividing the cities of this State into three classes, &c., and providing for the incorporation and government of cities of the third class," approved the 23d day of May, A. D. 1874.

*Sec.* 1. Be it ordained by the select and common councils of the city of Scranton, &c., that the provisions of an Act of Assembly of the Commonwealth of Pennsylvania, entitled " an Act dividing the cities of this State into three classes, regulating the passage of ordinances, providing for contracts for supplies and work for said cities, authorizing the increase of indebtedness, and the creation of a sinking fund to redeem the same, defining and punishing certain offences in all of said cities, and providing for the incorporation and government of cities of the third class," approved the 23d day of May, A. D. 1874, and the supplements thereto, be, and the same are hereby accepted and adopted for the management and government of the city of Scranton, a city of the third class, heretofore incorporated.

*Sec.* 2. That a copy of this ordinance, approved by the mayor and duly certified by the clerk of the select council, and otherwise authenticated as required by section 57 of said Act, be forwarded to the Secretary of the Commonwealth.

4. By letters patent under the great seal of the Commonwealth of Pennsylvania, bearing date April 4th, 1877, his Excellency John F. Hartrauft, Governor of the Commonwealth, certified the surrender by said city of Scranton of the former charter of said city, and the acceptance by said city of the Act of the General Assembly of the Commonwealth of Pennsylvania, approved the 23d day of May, A. D. 1874, and the supplements thereto, which said certificate was recorded in the Recorder's office of Luzerne county, upon the 29th day of August, A. D. 1877, in Charter Book, No. 1, at page 282, etc.

5. For several years immediately prior to the enactment of the ordinance mentioned in the third finding of fact, the city of Scranton had been divided into four school districts as provided in the twenty-fifth section of the Act of General Assembly, entitled " a supplement to an Act to incorporate the city of Scranton, extending and defining the powers of said city," approved the 30th day of March, A. D. 1867.

6. Upon the issuing of letters patent to the city of Scranton as mentioned in the fourth finding of fact, the four school districts of the city of Scranton were duly consolidated into one school district which has since been known as the " City of Scranton School District."

7. P. J. Ruane is the treasurer of the city of Scranton and *ex officio* school treasurer of the city of Scranton school district.

8. The plaintiff is a citizen and tax-payer of the said city of Scranton, and is the owner of seventy-five acres of unimproved land in the Fifteenth ward of said city, which was assessed by the assessing authorities of said city at the last triennial assessment as third class property, and valued at $7,167, and such is the adjusted valuation for city purposes.

9. The same property was assessed by the assessing officers of the county of Lackawanna without classification for county purposes for the same year, and valued at $5,625, and such is the adjusted valuation of said property for county purposes.

10. The city of Scranton school district has levied a tax of ten mills upon the dollar for school purposes, upon the adjusted valuation of plaintiff's property made for city purposes, which said tax amounts to the sum of $71.67, and also one half mill upon the dollar upon the same valuation of the same property to provide for the payment of the interest and the liquidation of the principal of the indebtedness of said school district, which said tax amounts to $3.59. And the said school district is now, through its treasurer, P. J. Ruane, endeavoring to collect the said taxes from plaintiff.

11. The rate of ten mills for school purposes, and one half mill for payment of interest and liquidation of principal of indebtedness, is the uniform rate imposed by said city of Scranton school district for the year 1885 upon all real estate in said city, of whatever kind or class, or for whatever purpose used.

Upon this state of facts the plaintiff contends that defendants have no right to collect more than one half of the amounts mentioned, for the reason that the Act of Assembly entitled "a supplement to an Act entitled ' an Act dividing the cities of this State into three classes, regulating the passage of ordinances, providing for contracts for supplies and work for said cities, authorizing the increase of indebtedness, and the creation of a sinking fund to redeem the same, defining and punishing certain offences in all of said cities, and providing for the incorporation and government of cities of the third class,' approved May 23d, A. D. 1874," approved the 18th day of March, A. D. 1876, provides that property in such cities of the third class as shall adopt said supplement, shall be classified, and " that all taxes authorized to be collected in said cities, whether for general or special purposes of such city of the third class, shall be assessed, levied and collected as follows: upon property of the first class a full rate, and upon property of the second class a two thirds rate, and upon property of the third class a one half rate."

It being further contended by plaintiff that the said Act of Assembly applies to school taxes as well as to city taxes, and that it has become a part of the organic law of the city of Scranton by virtue of the ordinance of said city, approved the 16th day of March, A. D. 1877, and the certificate of the Governor issued in pursuance thereof.

To this the defendants interpose three distinct grounds of defence, the affirmation of any one of which will suffice to destroy the plaintiff's right to the remedy sought by this bill and necessitate the dismissal thereof.

These grounds of defence, in the order in which they are presented by the defendants, are as follows:

First. The first five sections of the Act of 18th March, 1875, being coupled with the proviso, as follows:

"Provided, that no city of the third class, nor any city of less population than ten thousand inhabitants, heretofore incorporated, shall become subject to the foregoing provisions of this Act, until the same are accepted by an ordinance, duly passed by a majority of the members elected to each branch thereof voting in favor of the same, and approved by the mayor," have never been adopted by the city of Scranton and are not now in force in said city for any purpose.

Second. The said Act of 18th March, 1875, has no application to school taxes, and therefore the defendants have nothing to do with the classification and unequal rate provided for in said Act.

Third. The first five sections of the said Act of 18th March, 1875, are contrary to that portion of § 7, of Article third of the Constitution of Pennsylvania which provides that "the General Assembly shall not pass any local or special law . . . . . regulating the affairs of counties, cities, townships, wards, boroughs, or school districts," and are therefore void.

\*          \*          \*          \*          \*          \*          \*

Are the first five sections of the Act of March 18th, 1875, in contravention of that portion of the Constitution of Pennsylvania which provides that "the General Assembly shall not pass any local or special laws regulating the affairs of counties, cities, townships, wards, boroughs, or school districts?"

It will hardly be denied that this prohibition extends to the delegation of the power, of passing local or special laws, to the various municipalities named. The spirit of the Constitution must be followed in legislation as well as its letter. If the legislature can pass no special law regulating the affairs of a city, the same prohibition would prevent it from delegating to the city the power to pass a special law for its own regulation, and this is, in effect, what the Act of 1875 and many other enact-

ments of the legislature supposed to be in harmony with the General Act of 1874, have undertaken to do. The decisions of the Supreme Court upon the constitutionality of the Act of 1874, when closely examined, will be found to furnish no precedent for such legislation. The Act of 1874 when applied to certain subjects, has been declared constitutional, but it can hardly be said to follow that any Act which may be passed containing the same option clause as the Act of 1874, can shield itself under the pale of these decisions. Both Wheeler v. Phila., 27 P. F. S., 338, and Kilgore v. Magee, 4 Norris, 401, arose upon questions concerning legislation affecting all cities of the first and second classes respectively. A statute which should at the time of its approval apply to all cities of the third class would have for its support the precedent of these decisions. The Act of 1875 goes further than this; under its provisions there may be a further division of cities of the third class into those which have accepted the Act of 1875, and those which have not, and this irrespective of their acceptance of the Act of 1874 to which the Act of 1875 is called a supplement. Some cities may accept the Act of 1874 and reject the supplement, while others accept the supplement and reject the Act of 1874. Thus by a juggle between the legislature and the municipalities special legislation is obtained, and the Constitution is evaded. The wisdom of special legislation for cities is not now in question. It is enough to say the Constitution prohibits it. To support that Constitution, in its letter and spirit, is the duty of courts of justice. If it is wise and just to levy an unequal rate of taxation upon separate classes of property in cities throughout this Commonwealth, the legislature have the power to enact a law for that purpose; they have no power under the Constitution to enact a law which shall permit the various cities to choose for themselves whether they will have an equal or an unequal rate; if this could be done, the same principle would permit every subject of municipal regulation to be virtually enacted by the several municipalities, and an era of special legislation inaugurated, tenfold worse than that which existed before the present Constitution was adopted.

Have the first five sections of the Act of 1875 been sufficiently adopted by the city of Scranton?

The title of the Act of 1875 designates it a supplement to the General Act of 1874. If it is not a supplement, if it introduces an entirely new subject, to wit: the classification of real estate, and the unequal rate of taxation thereupon, it is unconstitutional upon another ground, to wit: that its subject matter is not clearly expressed in its title.

If it is a supplement to the Act of 1874, the ordinance

passed for the adoption of the Act of 1874 and its supplements, and the certificate of the Governor issued in pursuance thereof, constituted, in the opinion of the Master, a sufficient adoption by the city of Scranton of the Act of March 18th,. 1875.

The Master therefore submits the following :

1. The Act of Assembly, approved the 18th day of March, A. D. 1875, P. L., 15, has no application to school taxes.

2. The first five sections of the said Act of Assembly are in violation of that portion of Article third of the Constitution of Pennsylvania, which prohibits the general assembly from passing any local or special law regulating the affairs of counties, cities, townships, wards, boroughs, or school districts.

3. The ordinance of the city of Scranton, approved the 16th day of March, A. D. 1877, and the certificate of the Governor issued in pursuance thereof, constituted a sufficient and lawful adoption of the Act of March 18th, 1875, by the said city of Scranton.

4. The bill in this case should be dismissed.

Exceptions were filed both by the plaintiff and by the defendants. These were argued before McCollum, P. J., of the 34th judicial district, holding a special court, who entered the following decree :

This cause came on to be heard on exceptions to the Master's. report, January 4th, 1886, and was argued by counsel ; and thereupon on due consideration the plaintiff's exceptions to said report are sustained, and the defendant's exception to the same is dismissed, and it is considered, adjudged and decreed that the defendants be restrained and enjoined by permanent injunction from collecting the tax specified in the plaintiff's bill, to wit: a full rate tax upon third class property of the plaintiff, and that the said defendants pay the cost.

The defendants thereupon took this appeal, assigning this decree for error.

*Fred. W. Gunster (Charles H. Wells* with him), for appellants.—The first five sections of the Act of March 18th, 1875, are unconstitutional.

The Constitution provides as follows:

" The General Assembly shall not pass any local or special law

" Regulating the affairs of counties, cities, townships, wards, boroughs, or school districts. . . . . .

" Regulating the management of public schools, the building or repairing of school houses, and the raising of money for such purposes ": Sec. 7, Article 3, Constitution of 1874.

" Nor shall the General Assembly indirectly enact such spe-

cial or local laws by the partial repeal of a general law ":
Sec. 7, Article 3, Constitution of 1874.

" The legislative power of this Commonwealth shall be
vested in a General Assembly, which shall consist of a senate
and a house of representatives ": Sec. 1, Article 2, Constitu-
tion of 1874.

" No bills except general appropriation bills shall be passed
containing more than one subject, which shall be clearly ex-
pressed in its title ": Sec. 3, Article 3, Constitution of 1874.

The Act in question violates one or more of these pro-
visions.

1. By the terms of the proviso contained in section 5, the
Act is applicable to only a portion and not all of the cities of
the third class.

The cities of Allegheny and Harrisburg are not subject to
them.

The proviso subdivides cities into those already incorporated
and those which may be incorporated after its date. And if
some of the cities accept the provisions of the Act there will
be a further subdivision.

We do not question the power of the legislature to classify
cities and to enact laws for each class, but contend that hav-
ing classified cities by the Act of 1874, they cannot make sub-
classes by excepting a portion of any one class by reference to
the date of their incorporation from the operation of a law
passed for the class.

2. The proviso leaves it optional with each city whether or
not it will become subject to the law.

Can the legislature, under the Constitution of 1874, pro-
vide more than one system for the government of cities of the
third class ?

They provided one tax system for such cities by the Act of
23d May, 1874, P. L., 230.

They attempted to provide another tax system optional with
cities already incorporated, by the Act of 18th March, 1875,
P. L., 15.

They attempted to provide still another system, likewise
optional, by the Act of 28th May, 1879, P. L., 68.

If such legislation be sustained any city may get such par-
ticular laws as it wishes without interfering with other cities
by simply tacking on a proviso like the one in question and
then passing the ordinance.

A repeal of the constitutional prohibition were infinitely
better, for then the legislature would know for whom they
were legislating, and the people would know when they were
being legislated for.

The following from the veto message of Governor PATTI-

SON, of July 10th, 1885, is a startling exposition of the manner and the extent to which special and local legislation is sought. We ask this court to add its protest to that of the chief executive, and to sustain the plain prohibition of the Constitution of the Commonwealth:

The prohibition of § 7, of Article III. of the Constitution, against the passage of local or special laws "regulating the affairs of counties, cities, townships, wards, boroughs, or school districts," is absolute. The prohibition against local or special laws upon this subject includes the command that whenever laws relating thereto are passed, they shall be general in their application. Anything which defeats or limits their general application is obnoxious to the prohibition. If certain counties or cities cannot be specially legislated for by name, they cannot be thus legislated for by including them in an exception to a general law. The inhibition is against passing laws that will operate upon them alone to the exclusion of others in the same general legal category. Again, the fact whether a law is general or special is to be determined by the force of its operating words at the time of its passage, and cannot be made to depend upon the happening of any such contingency as the desire or action of the councils of a city or the act of a board of county commissioners. If the legislature cannot give a particular county immunity from the operation of a general law, it cannot depute to the city or county the privilege of giving itself such immunity. The power denied to the superior body cannot be vested by it in the subordinate. Neither can the intendment of a broad constitutional provision be defeated by any mere juggle of words. If the law only recognizes cities of given classes, the legislature cannot further divide those classes into those accepting and those not accepting legislation. Neither can such a division be set up as counties governed by special laws and those not governed by special laws. If this could be done, the whole purpose of the constitutional prohibition would be defeated. Some counties or cities in given classes would be governed by one law, and some by others. If the bills now objected to should be signed, the extent or generality of their application would be dependent entirely upon the willingness or unwillingness of certain counties or cities to be governed by them. Surely, this cannot be done, and the purpose of the Constitution be defeated in such an indirect and specious manner. The tendency of this sort of legislation has become so great that I think it is time to assert rigidly the spirit and letter of the Constitution. It is true that many laws containing option clauses have been enacted in the past, and some may have received the sanction of the present executive. The recur-

rence of this character of enactments, however, has become
so frequent as to induce me to attempt to out-root the prac-
tice, if possible.

3. If the taxes contemplated by the Act of 1875 include
school taxes, then the Act is *pro tanto* unconstitutional, as
legislation for only a small number and not all of the school
districts of the State.

Conceding the power of the legislature to classify counties,
cities, school districts, &c., and then to legislate for the respec-
tive classes, when and how were the school districts of the
state classified? No classification of school districts has as
yet been attempted, and until they are classified any Act
affecting them must affect all or none : Commonwealth *ex rel.*
Fertig *v.* Patton, 7 Norris, 258; Scowden's Appeal, 15 Nor-
ris, 422; Davis *v.* Clark, 15 W. N. C., 209; McCarty *v.* Com-
monwealth, 16 W. N. C., 497.

4. Nowhere in the title of the Act in question is there the
remotest reference, express or implied, to schools, school dis-
tricts, or school taxes. Certainly no such ideas as these
words suggest are " clearly expressed in the title."

5. The proviso is a virtual delegation of the legislative
power : Parker *v.* Commonwealth, 6 Barr, 507; Lock's Ap-
peal, 22 P. F. S., 491.

6. The Act of 1854, which requires school taxes to be
levied at a uniform rate on the adjusted valuation for state
and county purposes, is a general law. If the taxes mentioned
in the Act of 1875 include school taxes, then the Act of 1875
is a partial repeal of the Act of 1854—a partial repeal of the
Act of 1854 in all cities which accept the provisions of the
Act of 1875.

Again, the Act of 1874 relating to cities is a general law.
The tax provisions of the Acts of 1875 and 1874 cannot stand
together, and whenever any city of the third class accepts the
Act of 1875 so much of the Act of 1874 as conflicts therewith is
repealed as to that city. By force of its own provisions the
Act of 1875 (first five sections) becomes a partial repeal of
the general law of 1874 and is local, applying only to the city
which accepts it.

*E. N. Willard* (*Everett Warren* with him), for appellee.—
" Nothing but a clear violation of the Constitution, a clear
usurpation of the powers prohibited, will justify the Courts in
pronouncing an Act of the Legislature unconstitutional and
void : " Soper *v.* School District, 11 Wright, 150; Sharpless *v.*
The Mayor, 9 Harris, 164; Hilbish et al. *v.* Catherman, 14 P.
F. S., 154; Penna. R. R. Co. *v.* Riblet, 16 P. F. S., 164; Com-
monwealth *v.* Butler, 11 W. N. C., 241.

" All the presumptions are in favor of the constitutionality of an Act of Assembly. It comes to us with the seal of approval of two of the co-ordinate departments of the government. To doubt is to decide in favor of its constitutionality. It is only in a clear case that we are justified in declaring an Act to be unconstitutional : " Craigh *v.* First Presbyterian Church, 7 Norris, 42.

When Wheeler *v.* Philadelphia, 27 P. F. S., 338, and Kilgore *v.* Magee, 4 Norris, 401, were before this Court, able lawyers who were members of the last Constitutional Convention, contended, in those cases, that the seventh section of the third article of the Constitution absolutely prohibited the classification of cities ; that all laws relative to cities must be applicable to the chief city of the Commonwealth with its immense population and wealth, and the smallest interior city of the third class, alike.

This Court decided that the just classification provided · for in the Act of 1874 offended against no provision of the Constitution.

The right to legislate for cities by classes was firmly established by the unanimous decision of the Court.

In the cases above mentioned the Act of May 23d, 1874, was fairly before the Court; that part of the Act relative to cities of the third class contains a proviso, and the Act of March 18th, 1875, (the constitutionality of which this Court doubted when this case was here on the preliminary injunction), also contains a proviso. The two provisos are as follows :

Act of 1874, Sec. 57.

" Any city of the third class, or any city of a less population than ten thousand inhabitants, heretofore incorporated, may become subject to the provisions of this Act, governing cities of the third class to be hereinafter incorporated ; and the mayor and councils of such city may effect the same by an ordinance thereof, duly passed by a majority of members duly elected to each branch thereof voting in favor of the same."

Act of 1875, Sec. 5.

" That no city of the third class, nor any city of less population than ten thousand inhabitants, heretofore incorporated, shall become subject to the foregoing provisions of this Act, until the same are accepted by an ordinance, duly passed by a majority of the members elected to each branch thereof voting in favor of the same, and approved by the Mayor."

[Appeal of City of Scranton School District.]

To test the question whether this is a statute relating to persons or things of a class, it is not a fair interpretation to say some of the class are not now under it, nor governed by its provisions. The broad and true test is, are any of the designated class deprived of the benefits of the Act by its terms; are any excluded from the operation of its provisions? We submit that there is not one city of the third class in the Commonwealth excluded from the provisions of this Act.

The Act in question, when it received the approval of the Governor of the Commonwealth, became a perfect law. It is not an invitation—it needs no ratification—it is not a delegation of legislative power, and lacks none of the qualities of command and prohibition essential to every law.

In Lock's Appeal, 22 P. F. S., 496, Justice AGNEW says: " And why shall not the Legislature take the sense of the people ? Is it not the right of the Legislature to seek information of the condition of a locality or of the public sentiment there? So long, therefore, as the Legislature only calls to its aid the means of ascertaining the utility or expediency of a measure, and does not delegate the power to make the law itself, it is acting within the sphere of its just powers.

In view of the irreparable injury that this appellee and other third class cities must sustain if either or both of said Acts are declared unconstitutional, we ask of this Court the rigid application of its former decisions on the question presented in the case at bar.

Mr. Justice GREEN delivered the opinion of the Court, October 4th, 1886.

The plaintiff in this case claims the benefit of the provision of the first section of the Act of 18th March, 1875, which directs that in cities of the third class for the purposes of taxation, all real estate and the improvements thereon, shall be classified and arranged in three classes, upon which different rates of assessment shall be imposed. The rate claimed by plaintiff is less than the full rate levied upon the adjusted valuation made for city purposes upon which the defendant has caused the school tax to be assessed. The proviso to the fifth section of the Act of the 18th March, 1875, excludes from the operation of the Act all cities of the third class and all cities containing less than ten thousand population previously incorporated, which do not accept, by an ordinance duly passed, the provisions of the Act. According to this all cities that do accept, will be subject to the methods of assessment and collection prescribed by the first five sections, and all that do not will not be so subject, and as to them different methods will prevail. Whether the methods prescribed by the Act

shall be the law, will depend, not upon the terms of the legislation, but upon the will of others who are not law-makers at all; and what may be the law in one city of the third class may not be the law in another city of the same class. In other words, a majority of the members of the city councils in any one city of the third class may impose upon the inhabitants of that city a method of taxation which may not prevail in any other city of the Commonwealth. A law which authorizes this to be done is, in our judgment, clearly obnoxious to the seventh section of the third article of the Constitution, which prohibits the General Assembly from passing any local or special law regulating the affairs of counties, cities, townships, wards, boroughs or school districts.

The circumstance that the power to determine the question is delegated to another body does not at all affect the question. The practical result is the same, the law of 1875 will be limited to the one or more cities that do accept, and that makes it local. All our recent decisions are to the effect that if local results either are or may be produced by a piece of legislation, it offends against this provision of the Constitution, and is void: Commonwealth *v.* Patton, 7 Norris, 258; Scowden's Appeal, 15 Id., 422; Davis *v.* Clark, 15 W. N. C., 209; McCarthy *v.* Commonwealth, Id., 497. In the first of these cases the method employed was to limit the application of the Act which ostensibly embraced "all counties" by a geographical description which confined it to one. In the next case the attempt was made to produce the same result by describing two concurrent populations of county and city of such figures as to confine the operation of the Act practically to but one county, and it was condemned for the same reason. In the last two of the cases named, the objectionable limitation restrained the operation of the Act to counties of prescribed population, and in both cases the legislation was condemned because it embraced less than the whole of the counties of the state. In Davis *v.* Clark the present Chief Justice said: "It was not then a general Act, applicable to every part of the Commonwealth. It did not apply to a great number of counties, but there is no dividing line between a local and a general statute. It must be either one or the other. If it apply to the whole state it is general. If to a part only, it is local. As a legal principle it is as effectually local when it applies to sixty-five counties out of the sixty-seven as if it applied to one only. The exclusion of a single county from the operation of this Act makes it local." We see no difference in principle between the foregoing cases and the present. It is the duty of the Court to enforce the Constitution as they find it. Attempts in covert modes to defeat its plain provisions, must be

[City of Scranton *v.* Silkman.]

set aside with the same certainty as when the methods are open. Even if the intention be innocent, and yet the legislation comes within the constitutional prohibition, it must not be tolerated. We are of opinion that the second conclusion of law found by the Master should have been sustained and the bill dismissed. The other matters discussed do not require consideration.

> Decree reversed and plaintiff's bill dismissed at the cost of the appellee.