# A. FROST v. JOHN CHERRY.

ERROR TO THE COURT OF COMMON PLEAS OF VENANGO COUNTY.

Argued October 3, 1888—Decided October 17, 1888.

| | |
|---|---|
| 122 | 417 |
| 137 | 403 |
| 122 | 417 |
| 20 SC | ²116 |
| 122 | 417 |
| 204 | ²377 |
| 122 | 417 |
| j 24 SC | ²653 |
| 122 | 417 |
| 212 | ¹542 |
| 122 | 417 |
| h 32 SC | ² 59 |
| 122 | 417 |
| 34 SC | ²605 |

1. The word, affairs, in the provision of § 7, article III. of the constitution, which prohibits the passage of any local or special act regulating the affairs of a county, means such affairs as affect the people of that county: Morrison v. Bachert, 112 Pa. 322; Commonwealth v. Patton, 88 Pa. 258; Scowden's App., 96 Pa. 422.

2. Because the act of June 23, 1885, P. L. 142, to repeal § 1, of the fence law of 1700, 1 Sm. L. 13, is to be effective in any county only upon a vote of the people at an election advertised at the request of the county

Statement of Facts.

commissioners, in favor of such repeal, it is special and local legislation within said prohibition.

3. The test is not results, but possibilities; the machinery to obtain the sense of the electors can be put into operation only by the county commissioners, and, when so moved, the fact that it may be rendered local in its effect, is fatal to the enactment: Scranton Sch. D.'s App., 113 Pa. 176, followed.

Before GORDON, C. J., PAXSON, STERRETT, CLARK, WILLIAMS and HAND, JJ.; GREEN, J., absent.

No. 152 October Term 1888, Sup. Ct.; court below, No. 63 August Term 1887, C. P.

On July 30, 1887, an appeal was entered by the defendant from a judgment recovered before Luman Stephens, city recorder, by A. Frost against John Cherry, which appeal was put at issue by the prothonotary, on the plea of nil debet.

When the case was called for trial on October 10, 1887, a case stated was agreed upon and filed, in the nature of a special verdict, and was as follows:

A. Frost, the above named plaintiff, was heretofore, to-wit: on the first day of July, A. D. 1887, possessed of a certain close, to-wit: fields and grounds kept for inclosures, in the township of Cherrytree, in the county of Venango; and, while so thereof being possessed, the cattle of said defendant on, to-wit, the first day of July A. D. 1887, entered into and trespassed on said fields and grounds kept for inclosures, to the damage of the said plaintiff in the sum of six dollars; and said plaintiff further states that the said close, to-wit: the fields and grounds kept for inclosures, were not fenced in requirement to the provisions of the act of 1700, or any subsequent legislation as to fences in the commonwealth of Pennsylvania.

And the said defendant admits the trespass as above alleged; and, that prior to the time of said trespass, an election had been held in said county of Venango in pursuance of the provisions of § 2, act of June 23, 1885, P. L. 142, and for the purpose therein set forth, and that a majority of the electors of said county voted at said election "In favor of repeal."

If the court be of the opinion that upon the facts as above stated the plaintiff is entitled to judgment, then judgment so to be entered; if not, then judgment for defendant; the costs

to follow the judgment, and either party reserving the right to sue out a writ of error therein.

The cause was argued on October 26, 1887, and on January 23, 1888, the court, TAYLOR, P. J., filed the following opinion and decree :

It being admitted in the facts agreed upon, that the trespass was committed by the cattle of the defendant upon fields and grounds improved or kept for inclosure, and not being fenced, it may be conceded that without the aid of act of June 23, 1885, the plaintiff could not recover : Adams v. McKinney, Addison, 258 ; Gregg v. Gregg, 55 Pa. 227.

The questions raised and argued by counsel may be reduced to these propositions :

1. Was the 1st section of the act of 1700 in force in Venango county at the time of its alleged repeal, in pursuance of the act of June 23, 1885 ?

2. Is said act of June 23, 1885, unconstitutional by reason of its being special or local legislation ?

3. Is said act unconstitutional by reason of its delegation of the sovereign power to the people ?

1. As to the first question, was the 1st section of the act of 1700 in force in this county at the time of the alleged repeal?

Since the act of 1700 there has been enacted in this commonwealth 65 general and local acts for separate counties, and at least 120 local acts affecting particular cities, townships and boroughs, relating to fences and strays.

By the successful overthrow of the authority of the British crown, all laws theretofore enacted under its authority, or by its representatives, were abrogated, and on the 28th day of January, 1777, the general assembly enacted the following statute : " That each and every one of the laws or acts of general assembly that were in force and binding on the inhabitants of said province on the 14th day of May last, shall be in force and binding on the inhabitants of this state from and after the 10th day of February next, as fully and effectually to all intents and purposes as if said laws had been enacted by this general assembly :" 1 Sm. L. 429. During the seventy-six years which elapsed between the enactment of 1700 and the 14th day of May, 1777, several acts relating to fences and

strays had been passed. An examination of these acts shows that on the 14th day of May, 1777, the only part of the act of 1700 then in force was the first clause, which provides : "That all cornfields and grounds, kept for inclosure within the said province and counties annexed, shall be well fenced." In the case of Gregg v. Gregg, decided in 1868, Justice STRONG, delivering the opinion, reviews the different acts, and holds that the clause of the act of 1700, above recited, is in force without restriction or limitation to any portion of the state. I am, therefore, of the opinion that the first clause of the act of 1700, requiring owners of improved lands to fence the same, was in force in this county.

2. The second proposition raises the question of the constitutionality of the act of June 23, 1885, by reason of its alleged special or local legislation.

The act is entitled : " An act to repeal the 1st section of an act for regulating and maintaining of fences, passed in 1700." After reciting the 1st section of the act of 1700 verbatim, it closes as follows : . . . .

The 7th section of article III. of the constitution of 1874, inter alia, provides : " The general assembly shall not pass any local or special law regulating the affairs of counties, cities, townships, wards, boroughs, or school districts." In another clause : " Nor shall the general assembly indirectly enact such special or local law by the partial repeal of a general law ; but laws repealing local or special acts may be passed." The word, affairs, as herein used, has received a judicial construction. Prior to the framing and adoption of the constitution of 1874, special or local legislation had become an evil of great magnitude, and it required and received special attention upon the part of the convention moulding the organic law, in order, if possible, to effectually prevent the recurrence of the public wrongs and evils which had been perpetrated by such special and local legislation in the past. The earnest endeavors of the members of the convention to effectually eradicate all special or local legislation, thenceforth, from our statute books, is evident by the fact that they not only prohibited such legislation in plain, unmistakable language, thus : " The general assembly shall not pass any local or special law," etc., but to emphasize their intention that no more of the vicious legislation

should in an indirect manner be enacted, in another clause they farther extended the prohibition as follows: "Nor shall the general assembly indirectly enact such special or local laws by the partial repeal of a general law," etc. Our Supreme Court, in their construction of acts apparently in conflict with these wise provisions of the constitution, have rigidly adhered to such an interpretation as carried into effect the intention of its framers, and upon every occasion have placed their seal of condemnation, not only upon every open violation, but also every secret attempt to evade the wise provisions "under the attempted disguise of a general law:" Scowden's App., 96 Pa. 425.

That general legislation upon all subjects is impossible, and therefore classification upon subjects and persons is necessarily without the limits of constitutional prohibition may be conceded: Wheeler v. Philadelphia, 77 Pa. 346; Kilgore v. Magee, 85 Pa. 401; Commonwealth v. Patton, 88 Pa. 258.

Under the latest decision of our Supreme Court, a local or special act is one which operates or may operate within only a portion of the territory occupied by the persons or things to which the legislation naturally and properly relates. In the light of this definition of what constitutes local or special legislation, let us examine the act of 1885. If the 1st section stood alone, there would be no difficulty, for it simply repeals the 1st section of the act of 1700; but the 2d section is inseparably connected with the 1st. The 1st is a dead letter upon the statute books, dependent upon the provisions of the 2d section being carried affirmatively into effect; further, the 1st section expressly provides that the 1st section shall not take effect until the provisions of the 2d are fully consummated. The two sections must, therefore, respectively be construed and passed upon as a whole.

The first thing to be noticed is the innate modesty of the act. The 2d section commences: "That it shall be the duty of the sheriff of any county, on the request of the county commissioners thereof," etc. The whole law is to be put in operation at the request of the county commissioners. Suppose the commissioners should refuse to act, how would they be compelled? I am aware that the word "may," in some cases where the public interests are at stake, has been construed as

" shall," but I do not now remember of a single case where a simple request has been enforced by mandamus. I am informed, whether correctly or otherwise, that, in the mountainous counties of the state, the citizens are largely opposed to the law; whether true or not, matters not; the principle is the same. Each separate county in the state may accept of the provisions, or may reject them. The act contemplates the division of the state into counties; each one to act by itself, and for itself. In one or more the popular vote may be in favor of " the repeal," and in such county or counties it is provided that " the act shall take effect forthwith," and thenceforth therein the common law is the rule of action. And every owner of cattle in such county would be held responsible for any damages arising from their trespasses. Other counties may vote " against the repeal," or not vote at all, and in such counties the first clause of the act of 1700 still remains the law. Thus it is seen that we have different laws upon the same subject-matter, bounded and defined by distinct territorial limits.

Such a result creates the very evil the framers of the constitution intended to remedy or prevent. It matters not that every county in the commonwealth may accept the provisions of the act of 1885; the vice in the act consists in that any county may reject it. In Scranton Sch. D.'s App., 113 Pa. 176, the 1st section of the syllabus is as follows: "If an act regulating the affairs of counties, cities, townships, etc., . . . . either produces or may produce local results, it offends against § 7, article III. of the constitution, and is therefore void." In the opinion it is, inter alia, said: " Whether the methods prescribed by the act shall be the law, will depend, not upon the act of the legislature, but upon the will of others who are not law-makers at all; and what may be the law in one city of the third class, may not be the law in another city of the same class. In other words, a majority of the members of the city council, in any city of the third class, may impose upon the inhabitants of that city a method of taxation which may not prevail in any other city of this commonwealth. A law which authorizes this to be done, in our judgment, is clearly obnoxious to the 7th section of article III. of the constitution, which prohibits the general assembly from passing any local or special

law regulating the affairs of counties, etc. . . . . . The circumstance that the power to determine the question is delegated to another body does not at all affect the question. The practical result is the same ; the law of 1875 will be limited to the one or more cities that do accept, and that makes it local. All our recent decisions are to the effect that if local results either are, or may be, produced by a piece of legislation, it offends against the provisions of the constitution, and is void," citing Commonwealth v. Patton, 88 Pa. 258 ; Scowden's Appeal, 96 Pa. 425, and other cases.

This ruling of the Supreme Court is decisive of the question. Some counties may accept the provisions of the act of 1885, while others may reject, and the practical result is that the act will be limited to those counties who do accept, and this makes the act local. I am, therefore, of the opinion that the act clearly is within the constitutional prohibition, and is void.

The third proposition, relating to the delegation of sovereign power, would seem to be ruled by Locke's App., 72 Pa. 491 ; but the view which I have taken of the second question raised makes it unnecessary to express an opinion upon it. For the reasons given, judgment is ordered to be entered for the defendant.

Judgment having been entered as ordered, the plaintiff took this writ and specified that the court erred:

1. In declaring the said act of June 23, 1885, unconstitutional.

2. In rendering judgment for the defendant, on the case stated.

*Mr. J. H. Osmer* (with him *Mr. H. D. Hancock*), for the plaintiff in error:

1. It is not claimed, nor can it be, that the first section of the act of June 23, 1885, P. L. 142, standing alone, is unconstitutional. The first section of the act of 1700 is unconditionally and absolutely repealed by the act of 1885, and while we do not concede the unconstitutionality of the latter act, for any reason, we say that though part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void, unless all the provisions are so connected in

subject matter, depending on each other, operating for the same purpose, or otherwise connected in meaning, that it cannot be presumed the legislature would have passed one without the other: Cooley's Const. Lim., 5th ed. 212, 178*; Commonwealth v. Potts, 69 Pa. 164.

2. But the validity of the act in question does not require such construction. It was declared unconstitutional by the court below, solely because it is provided by its second section that it should not go into effect in any county until after a majority of the electors of such county should vote in favor of such repeal; and, because it is manifest that some counties might vote in favor of and others against the repeal, or, by not voting at all, retain the act of 1700, it is therefore special legislation and violative of § 7, article III. of the constitution. But special or local legislation is prohibited by the constitution only as to the subjects enumerated in § 7, article III. As to all other subjects, the power of the legislature is the same as it was before the adoption of the constitution.

3. The act of 1700 cannot be said in any sense to regulate county, city, township, ward, or school district affairs. Whether the owner of land fences it or not, is optional with him under that act; it is purely a personal and individual affair. Hence, the act of 1885 does not relate to either of the prohibited subjects. It was the subject matter of the statutes, passed upon in Scranton Sch. D.'s App., 113 Pa. 176; Commonwealth v. Patton, 88 Pa. 258, and Morrison v. Bachert, 112 Pa. 322, which determined their unconstitutionality, and we submit that these adjudications have no application.

4. Moreover, there is no delegation of legislative power in the act of 1885. The act as passed and approved is complete. Only the question as to whether its provisions are desirable or expedient is left to the electors of the several counties. " When the legislature calls to its aid only the means of ascertaining the utility of a measure, and does not delegate the power to amend the law, it is acting within its powers: " Locke's App., 72 Pa. 491. Such was the ruling of this court upon the constitutionality of the local option law. Laws of this nature, relating to subjects like the retailing of intoxicating drinks, or the running at large of cattle, are sustained as being within the class of police regulations in respect to which

it is proper that the local judgment should control: Cooley Const. Lim., 5th ed., 125*; Commonwealth v. Bennett, 108 Mass. 27 (11 Amer. R. 304); Commonwealth v. Dean, 110 Mass. 357.

Mr. W. J. Breene, for the defendant in error:

1. "A constitution is not to receive a technical construction, like a common law instrument, or a statute. It is to be interpreted so as to carry out the great principles of government, not to defeat them:" Commonwealth v. Clark, 7 W. & S. 127. When it speaks of the affairs of a county, it means such affairs as affect the people of that county: Morrison v. Bachert, 112 Pa. 322. The word affairs is to be liberally and beneficially interpreted: Buckalew on The Constitution, 72.

2. It is self-evident that the whole machinery of the act of 1885 is to be put into operation by the county commissioners acting as such, and not in their individual capacity; the sheriff, by virtue of his office, must satisfy the requirements as to publication; and lastly, the qualified electors of the particular county decide whether or not the act shall take effect in that county. Thus the legislature recognizes the proposed regulation of the fence law of 1700 by the act of 1885, as a regulation of county affairs. The act is therefore unconstitutional.

OPINION, MR. JUSTICE PAXSON:

This case involves the constitutionality of the act of assembly of June 23, 1885, P. L. 142, entitled " An act to repeal the first section of an act entitled ' An act for regulating and maintaining of fences,' passed Anno Domini one thousand and seven hundred."

The first section repeals in terms the above recited act of 1700, commonly known as the fence law. Had it stopped here, there would have been no question as to its validity. But the second section contains this important provision: " That it shall be the duty of the sheriff of any county, on the request of the county commissioners thereof, to cause this act to be published therein, with and in the same manner that notices of the next general election shall be published; and for the purpose of ascertaining whether or not the provisions of this act are deemed expedient and desired in such county, the

qualified electors thereof may vote, at such next general election, by ballots, written or printed, as follows, namely: On the outside the words, 'Repeal of the fence law,' and on the inside the words, 'In favor of repeal,' or 'Against repeal;' and in receiving, counting, and making returns of the ballots aforesaid, the judge, inspectors, and clerks shall be governed by the laws of this commonwealth regulating general elections; and if, upon a proper count of such ballots in any county, it shall appear that a majority thereof are 'In favor of repeal,' this act shall forthwith take effect therein; but the same shall not take effect in any county of this commonwealth until it has been ascertained that the provisions thereof are deemed expedient and desired therein by an election as hereinbefore provided: Provided, That if at an election held in any county under the provisions of this act, it shall appear that a majority of the votes cast thereat are 'Against repeal,' no vote shall be taken again as herein provided for the period of three years thereafter."

It is contended, and the learned judge below so held, that the act is in conflict with § 7, article III. of the constitution, which provides, inter alia, that "The General Assembly shall not pass any local or special law regulating the affairs of counties, cities, townships, wards, boroughs, or school districts."

The word, affairs, as used in the constitution, has received a judicial construction by this court. In Morrison v. Bachert, 112 Pa. 322, it was said: "When it (the constitution) speaks of the affairs of a county, " it means such affairs as affect the people of that county." We accordingly held in that case that an act to ascertain and appoint the fees to be received by prothonotaries and other county officers was an act regulating the affairs of counties; while in Commonwealth v. Patton, 88 Pa. 258, and in Scowden's Appeal, 96 Pa. 422, we ruled that an act of assembly which authorized the holding of special sessions of the courts of Crawford county, away from the county seat, offended against this clause in the constitution. The particular device resorted to in these cases to evade the constitutional prohibition was classification.

The act of 1885 concerns the great body of the people of the county. It affects every farmer, almost every lot-holder, and every person who keeps horses or cattle, sheep, hogs, or

goats. It would seem difficult to frame an act which could more generally concern the people. Moreover, it prescribes certain duties to the sheriff, the commissioners, and all the election officers. How then can it be said that it does not relate to the "affairs" of counties within the meaning of the constitution.

Is it a local law? Upon this point we are free from doubt. It is to be observed that the first section, repealing the act of 1700, does not go into effect in any county by its own force. If it did, we might sustain it even if the rest of the act were unconstitutional. But the first section is tied to the second section by an umbilical cord. If we cut it they both perish. The first section is only effective after a vote of the people in each county. If a majority in any county vote in favor of it, then the act takes effect in such county ; if the majority should be against it, the act does not take effect. Thus it may very well happen that Venango county may vote in favor of the repeal and its adjoining counties vote against it. We would then have one law in Venango county regulating fences, and a different law in the adjoining counties, both local laws, the very thing prohibited by the constitution. Nor would it make any difference were every county in the state to vote the same way. The test is not results, but possibilities. The machinery to test the sense of the people can only be put in operation by the county commissioners, and when so moved, the fact that it may be rendered local in its effects is fatal to the bill. In City of Scranton School D.'s App., 113 Pa. 176, it was said by Mr. Justice GREEN, in delivering the opinion of the court: "The circumstance that the power to determine the question is delegated to another body does not at all affect the question. The practical result is the same ; the law of 1875 will be limited to the one or more cities that do accept and that makes it local. All our recent decisions are to the effect that if local results either are or may be produced by a piece of legislation, it offends against this provision of the constitution and is void ;" citing Commonwealth v. Patton, supra, and other cases. Scranton School D.'s App., is upon all fours with the case in hand. The act of 1875 there referred to was an act for the assessment, levy, and collection of all taxes authorized to be collected in certain cities, and to which by the proviso of the fifth

section no city of the third class shall become subject until they are accepted by ordinance of councils, approved by the mayor, and it was held that the first five sections thereof were thus limited to the one or more cities that accept, and were therefore local and in conflict with § 7, article III. of the constitution.

If there is anything now settled in the constitution it is that the legislature can no longer pass a valid local or special law regulating the affairs of counties, cities, townships, wards, boroughs, or school districts. And what the legislature may not do directly, it cannot accomplish by indirection, as by classification resting upon no necessity nor reason of public policy, or by calling in the aid of the people at the polls to breathe life into an otherwise dead statute.

I have not considered it necessary to discuss the question of the delegation of power. The act of 1885 is in such direct conflict with § 7, article III. of the constitution, that the learned judge below could not have done otherwise than declare it void for that reason.

Judgment affirmed.