## Schuylkill County Hospital.

*Constitutional law—Delegation to special commission—County officers—Local or special laws—Validating act—Act of March 23, 1925.*

1. The legislature has no power to validate proceedings and elections held under a prior act which has been declared unconstitutional.

2. The Act of March 23, 1925, P. L. 65, validating proceedings and elections held under the unconstitutional Acts of May 20, 1921, P. L. 944, and April 3, 1923, P. L. 52, is unconstitutional.

3. The Act of March 23, 1925, P. L. 65, is not unconstitutional as violating article iii, section 20, which forbids the delegation to any special commission of power to supervise municipal improvements or to levy taxes for municipal purposes.

4. The Act of March 23, 1925, P. L. 65, violates article iii, section 7, of the Constitution, which provides that "the general assembly shall not pass any local or special law regulating the affairs of counties, cities, townships, wards, boroughs or school districts."

5. Where an act of assembly confers powers on counties, but permits one county to accept, and another to reject, the provisions of the act, the act itself is local or special legislation.

Petition for appointment of an advisory board of five trustees for the construction and maintenance of a county hospital. C. P. Schuylkill Co., Nov. T., 1925, No. 685.

*William Wells* and *M. M. Burke,* for petition.

*A. L. Shay* and *Charles A. Snyder,* for exceptants.

Schuylkill County Hospital.

BECHTEL, P. J., July 26, 1926.—In this case a petition was filed setting forth that a majority vote was cast in the election of Nov. 7, 1922, by the electors of Schuylkill County under the provisions of the Act of May 20, 1921, § 1, P. L. 944, in favor of acquiring a site for and the construction and maintenance of a county hospital for the treatment of persons afflicted with tuberculosis.

That section 2 of the act provided that the county commissioners should thereupon have plans and specifications prepared and select and purchase a site for such hospital. Section 2 of said act was amended by the Act of April 3, 1923, P. L. 52, by the addition, in section 1 thereof, of the county controller and a board of five trustees to the county commissioners, thus constituting the body that was to have had the plans and specifications prepared. That these two said acts were declared unconstitutional by the Court of Common Pleas of Schuylkill County on Oct. 6, 1924, as being in conflict with article III, section 20, of the Constitution of the State of Pennsylvania.

That the Legislature of Pennsylvania passed an act authorizing the construction and maintenance of county tuberculosis hospitals on March 23, 1925 (No. 44). That said act repealed the said Acts of 1921 and 1923, but it, nevertheless, enacted in section 12 thereof, inter alia, that: "All proceedings heretofore had or instituted; all elections heretofore held under the provisions of the Act approved the 20th day of May, 1921, P. L. 944, . . . and its amendments and supplements, by any county, . . . are hereby ratified, confirmed, validated and made legal."

That the said Act of 1925, supra, enacted that if the majority of the electors voting upon such question at such election shall be in favor of the establishment of a hospital, the Court of Common Pleas of the county shall immediately appoint an advisory board of five members, all of whom shall be electors of the county, and one of whom shall be a licensed physician, and provides the length of the term of office of the different members of the board.

The petition further recites at length the material parts of the act of assembly, and concludes with a prayer for the appointment of an advisory board.

To this petition counsel representing the County of Schuylkill filed objections, claiming:

1. The Act of 1921 and the Act of 1923, supra, having been declared unconstitutional by this court, the judgment, unappealed from, became the law of the case and is final and conclusive.

2. An election held under an act declared unconstitutional is null and void and the legislature cannot give it life by a validating act, and the election held in November, 1922, was, therefore, utterly null and void.

3. The Act of 1925, supra, is unconstitutional for the following reasons:

(a) It offends against the inhibitions of article III, section 20, which provided: "The general assembly shall not delegate to any special commission . . . any power to make, supervise or interfere with any municipal improvement . . . or to levy taxes or perform any municipal function whatever."

(b) It offends against the inhibition of article XIV, section 2, which provides: "County officers shall be elected at the general elections."

4. The Act of 1925, supra, offends against article III, section 7, of the Constitution, which provides: "The general assembly shall not pass any local or special law regulating the affairs of counties, cities, townships, wards, boroughs or school districts."

In approaching the consideration of these questions, we feel that we cannot do better than quote from the language of the Supreme Court in Com. ex rel. Brown *v.* Gumbert et al., 256 Pa. 531. In discussing the constitutionality of the act authorizing the establishment and maintenance of schools for the care of certain female children in counties containing a population of not less than 750,000 and not more than 1,200,000 inhabitants, it is there said: "We approach the consideration of the question before us fully realizing that a decision adverse to the act will occasion deep regret, especially among those whose disinterested zeal on behalf of a dependent class has contributed largely to the passage of the act. This much we may be permitted to say, that, as citizens of the Commonwealth, they should have just cause for deep regret should the court before which the question is brought for adjudication disregard plain and positive constitutional requirements in order that an act of assembly, because of its beneficial aim, might be sustained."

In considering the constitutionality of this act, it is well to bear in mind the general rules as laid down by our higher courts. It has been said: "The legislature intended that the law of the subject-matter of the bill should be operative, and if it can be done, it is the duty of the court to reconcile the different parts of the law rather than to declare it void and frustrate the legislative intention. All the presumptions are in favor of the constitutionality, and nothing but a clear violation of the Constitution will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void:" Com. *v.* Moore, 2 Pa. Superior Ct. 162; Com. *v.* Crowl, 245 Pa. 554.

Again, it has been said: "One who asks to have a law declared unconstitutional takes upon himself the burden of proving beyond a doubt that it is so:" Gottschall *v.* Camel, 234 Pa. 357.

The first question to be considered is the effect of the curative paragraph in the Act of 1925, *supra.* This section 12 is as follows: "All proceedings heretofore had or instituted, all elections heretofore held, all purchases of land, all proceedings for the acquisition of land by the right of eminent domain, all moneys expended, and all bonds or other securities issued under the provisions of the Act approved the twentieth day of May, one thousand nine hundred and twenty-one, entitled 'An act authorizing the establishment by counties of hospitals for the treatment of persons afflicted with tuberculosis; providing for the management and maintenance thereof; and authorizing the incurring of indebtedness and the levy of taxes therefor,' and its amendments and supplements, by any county or by any board of trustees in behalf of any county, are hereby ratified, confirmed, validated and made legal, and in any county where any such hospital has been or is now being erected, or where proceedings have been instituted under the provisions of said act, such proceedings and hospital may be completed, and the said hospital may thereafter be managed and operated in accordance with the provisions of this act."

It will be noted that this section is entire, being in one sentence. It validates all proceedings heretofore had or instituted, all elections heretofore held, all purchases of land, all proceedings for the acquisition of land by the right of eminent domain; in fact, all proceedings under the Acts of 1921 and 1923, *supra,* by any county, *or by any board of trustees in behalf of any county.* There can be no question of the right of the legislature to enact curative legislation retroactive in its effect: Donley *v.* The City of Pittsburgh, 147 Pa. 349. It is there said: "The work having been done under void authority, and the property owners having received the benefits of the street improve-

ments, the legislature had the clear right to legalize what it might previously have ordered."

In Swartz v. Carlisle Borough, 237 Pa. 473, it is said: "It is settled law in Pennsylvania that the legislature has the power to legislate retrospectively on all matters, not penal nor in violation of contracts, not expressly forbidden by the Constitution."

In a dissenting opinion in the same case by Mr. Justice Stewart, concurred in by Chief Justice Mestrezat, the same doctrine is set forth in the following language: "The legislature may not accomplish by curative legislation that which it could not have done by and through the act which prescribed the requirements, the neglect or disregard of which had resulted in the defect sought to be cured."

In Kennedy v. Meyer, 259 Pa. 306, it is said: "If the authority for payment contained in the act before us is a violation of this section of the Constitution, then all curative acts and ordinances which direct or authorize payments by municipalities for work done without previous authority of law would be void."

In the 12th section of the curative act above quoted, the legislature seeks not only to validate the proceedings and elections held under the act, but especially to make counties liable for all acts performed by the board of trustees created under the provisions of the Act of 1921 and the Act of 1923, supra. Could the legislature do this?

Accepting as the law the decision declaring the Acts of 1921 and 1923 unconstitutional, the legislature never had any right to create the board of trustees under those acts. It was especially prohibited by article III, section 20, of the Constitution. Since the legislature never had any right to legislate on this subject, how could it by a curative act save that right? It might just as well have passed an act placing the entire municipal affairs of the county in the hands of one man, and when this was declared unconstitutional, by a curative act have legalized all his actions and compelled the municipality to pay all of the obligations contracted by him. If the legislature can do this, of what use is the provision of the Constitution above quoted?

We are clearly of the opinion that the legislature exceeded its authority when it attempted to make municipalities liable for the acts and expenditures of the board of trustees created under the Acts of 1921 and 1923, supra. This being so, it must naturally follow that the 12th section of the curative act is unconstitutional and void.

The next objection raises the question of the character of the board created under the Act of 1925, supra. This question has been lately passed upon by the court of Northampton County, which held that the creation of this board was not the delegation to a special commission of any municipal function. The question, to our mind, is a very close one. The act of assembly provides that an annual estimate shall be made by the board of trustees and delivered to the commissioners, who shall thereupon make an appropriation. It also provides for an annual report to the commissioners. It does not clearly appear who is to expend the annual appropriation made in response to the estimate of the board.

It also provides that the county commissioners shall, at the expense of the county, provide a meeting-place for said board and furnish all supplies and materials necessary to carry on its work, and shall allow said board all actual and necessary expenses incurred in the discharge of their duties.

Schuylkill County Hospital.

Counsel for the county contend that the act. clearly contemplates at least "an interference with the municipal building" if not an actual supervision of its affairs. As is well said in the opinion of the court of Northampton County In re Establishment of a County Hospital for Tuberculosis, No. 1662: "Nevertheless, reading the two acts together, it plainly appears that the framers of the Act of 1925 were determined to go as far as they could in placing the management of the hospital in the hands of a body that was created by this court, and which was intended to exercise a strong hand in everything that was necessary to be done in connection with that management. The effort plainly is to create an advisory board in place of the board of trustees mentioned in the prior act, and to make that board practically in charge of the hospital, reserving, however, to the county commissioners the right to veto the action of the advisory board."

It seems to us that the question is a very close one, but to doubt is not sufficient, and since we are not clearly convinced that the legislature exceeded its authority in the creation of the advisory board and the powers and duties delegated to it, we cannot sustain this objection.

The next question is: Is the Act of 1925, *supra*, a local or special law? It will be noted, in this connection, that section 1 of the Act of 1925, *supra*, provides, *inter alia:* "That whenever one hundred or more citizens . . . petition the county commissioners for the establishment of a county hospital for the treatment of persons afflicted with tuberculosis, the county commissioners shall, at the next general or municipal election, submit to the voters of the county the question whether or not the county shall establish such a hospital."

Section 2 provides, *inter alia:* "If a majority of the electors voting on such question at such election shall vote in favor of the establishment of such a hospital, the county commissioners shall acquire a site for such hospital, either by purchase or condemnation."

It is claimed that this is local or special legislation, for the reason that it applies only to such counties as vote to take advantage of the provisions of the act. In the Appeal of the City of Scranton School District, 113 Pa. 176, it is said:

"The proviso to the 5th section of the Act of March 18, 1875, excludes from the operation of the act all cities of the third class and all cities containing less than ten thousand population, previously incorporated, which do not accept, by an ordinance duly passed, the provisions of the act. According to this, all cities that do accept will be subject to the methods of assessment and collection prescribed by the first five sections, and all that do not will not be so subject, and as to them different methods will prevail. Whether the methods prescribed by the act shall be the law will depend, not upon the terms of the legislation, but upon the will of others who are not law-makers at all; and what may be the law in one city of the third class may not be the law in another city of the same class. In other words, a majority of the members of the city councils in any one city of the third class may impose upon the inhabitants of that city a method of taxation which may not prevail in any other city of the Commonwealth. A law which authorizes this to be done is, in our judgment, clearly obnoxious to the 7th section of the 3rd article of the Constitution, which prohibits the general assembly from passing any local or special law regulating the affairs of counties, cities, townships, wards, boroughs or school districts.

"The circumstance that the power to determine the question is delegated to another body does not at all affect the question. The practical result is the

same—that the law of 1875 will be limited to the one or more cities that do accept, and that makes it local. All our recent decisions are to the effect that if local results either are or may be produced by a piece of legislation, it offends against this provision of the Constitution and is void."

It will be noted in this quotation that the general doctrine is laid down: "All our recent decisions are to the effect that if local results either are or may be produced by a piece of legislation, it offends against this provision of the Constitution."

There can be no question that in the act before us one county might accept the provisions and proceed with the erection and maintenance of a hospital, while another county might not. In this event, the law would apply to the county accepting it and would not apply to the county which had not accepted it. This, it seems to us, brings it clearly within the rule laid down in the Appeal of the City of Scranton School District, 113 Pa. 176. This same doctrine has been cited approvingly in Com. v. Denworth, 145 Pa. 172, wherein it is said: "The statutes under which the appellant claims title to the office of recorder are in palpable conflict with section 7, article III, of the Constitution. They are local, because confined in their operations to cities of a specified population, which shall accept them by ordinance duly adopted by councils and approved by the mayor. Whether they shall apply to a city of the class described depends on the action of its municipal officers; and, in consequence thereof, one city of the class may be subject to their provisions and other cities of the same class be exempt from them. Without further elaboration of the subject, it is sufficient to say of this legislation that it is such as was condemned in Scranton School District's Appeal, 113 Pa. 176."

In Frost v. Cherry, 122 Pa. 417, it is said: "Is it a local law? Upon this point we are free from doubt. It is to be observed that the 1st section, repealing the Act of 1700, does not go into effect in any county by its own force. If it did, we might sustain it, even if the rest of the act were unconstitutional, But the 1st section is tied to the 2nd section by an umbilical cord. If we cut it, they both perish. The 1st section is only effective after a vote of the people in each county. If a majority in any county vote in favor of it, then the act takes effect in such county; if the majority should be against it, the act does not take effect. Thus, it may very well happen that Venango County may vote in favor of the repeal and its adjoining counties vote against it. We would then have one law in Venango County regulating fences and a different law in the adjoining counties, both local laws, the very thing prohibited by the Constitution. Nor would it make any difference were every county in the State to vote the same way. The test is not results, but possibilities."

We do not see how we could profitably add anything to the language here employed. It seems to us that the situations are identical. We are, therefore, of opinion that the act offends against section 7, article III, of the Constitution.

We have carefully examined the opinion In re Appointment of Commissioners of Northampton County, supra, and do not feel that this opinion is at all in conflict with the doctrine there laid down, for the reason that the questions which we are now considering and deciding were not decided by the court in that opinion. For the reasons herein given, we are of opinion that the Act of 1925, supra, is unconstitutional and void.

The objections to the appointment of the board of trustees by the county commissioners are hereby sustained and we decline to make such appointment.

NOTE.—See In re Tuberculosis Hospital, 7 D. & C. 725.