## Division of Sugar Notch Borough. School District's Appeal.

*Boroughs—School district—Statutes—Constitutional law—Act of June 1, 1887.*

The Act of June 1, 1887, P. L. 285, entitled "A further supplement to an act for the regulation of boroughs" is unconstitutional (1) in that the title fails fairly to give notice of the legislative purpose in that it does not refer to school districts; (2) it offends against the constitutional prohibition "of any local or special law . . . . regulating the affairs of . . . . school districts."

Argued Jan. 11, 1898. Appeal, No. 13, Jan. T., 1898, by school district of the borough of Warrior Run, from decree of Q. S. Luzerne Co., Jan. T., 1894, No. 283, adjusting the liabilities and property of said School District, etc. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Exceptions to auditor's report. Before BENNETT, J.

It appears from the record that this was an appeal by the school district of the borough of Warrior Run, in Luzerne county, from the decree of the court of quarter sessions of Luzerne county, adjusting the liabilities and property of said school district between said school district and the school district of the borough of Sugar Notch; the said borough of Warrior Run having been created out of a part of the borough of Sugar Notch.

The facts sufficiently appear in the opinion of the court below and the opinion of the superior court.

The opinion of the court below, by BENNETT, J., is as follows :

Pursuant to previous proceedings had for that purpose, under and in accordance with the provisions of the act entitled, "An Act to provide for the division of boroughs and the erection of new boroughs," approved May 29, 1889, P. L. 393, a decree of this court was entered on the 25th of January, 1895, dividing the borough of Sugar Notch, and setting off and erecting—ac-

cording to the boundaries therein given—the village of Warrior Run, (formerly included within the borough of Sugar Notch), into a new borough under the style and title of "the borough of Warrior Run."

On the day last aforesaid, to wit: January 25, 1895, the auditor whose report is here excepted to, was appointed under the provisions of the Act of June 1, 1887, P. L. 285. The title and first section of this act—being the legislation which is particularly important here, are as follows :

"A further supplement to an act, approved the eleventh day of June, Anno Domini, one thousand eight hundred and seventy-nine, entitled 'A supplement to an act for the regulation of boroughs,' approved the third day of April, one thousand eight hundred and seventy-one, providing for the adjustment of indebtedness and government of the boroughs, townships and school districts, affected by changes of limits of any borough in the commonwealth."

"Section 1. That, whenever proceedings shall have been or shall hereafter be commenced in any court of this commonwealth for the purpose of changing the limits of any borough by annexing thereto any adjacent tracts of land, or detaching therefrom any territory included therein, and the same shall have been approved by the grand jury to which the application shall have been submitted, it shall be the duty of the court, before entering the decree confirming the same, to appoint an auditor, who shall ascertain the existing liabilities of the several boroughs, townships and school districts, which may be affected by the said change of limits, the amount and value of the property owned by each, and the amount and value of the property passing to or from each borough, township or school district, and the assessed valuation of all property liable to taxation for borough, township or school purposes, as shown by the last annual assessment in each of said boroughs, townships and school districts, and within the limits of the part annexed to or detached from said borough, and shall report the same to the said court, with the form of decree adjusting the liabilities for all indebtedness, and the value of property held or acquired by each justly and equitably upon said borough, township and school district, respectively; and said court shall be authorized to direct the amounts that shall be paid one to the other, and

the time and mode of payment, and, if necessary to a proper and just adjustment of the same, may order and direct a special tax to be levied upon the property so annexed to or detached from said borough, for the payment of so much of the indebtedness as may be awarded against it and direct how the same shall be assessed and collected."

The auditor appointed as aforesaid has filed a report in pursuance of the provisions of the foregoing act. So far as concerns the school district of Sugar Notch borough and the school district of Warrior Run borough which was carved out of the territory of the former and came into existence with the new borough of Warrior Run, this report shows that there was no indebtedness of the school district of Sugar Notch borough at the time of the division; that, considering the value of the school property of the latter at that time and estimating the rights thereto of the two school districts on the basis of the relative assessed valuations of taxable property in each, there remains in the school district of Sugar Notch borough, school property to the value of $6,169.74 more than its proportionate share thereof; and the report recommends a decree that the latter district pay said sum to the school district of Warrior Run borough and that the money for the payment thereof be raised by a special tax in the school district of Sugar Notch borough. The latter borough is the exceptant here. It attacks that portion of the auditor's report above referred to, and by three of its exceptions complains that the act of 1887 is unconstitutional: (1) Because the subject of valuing school property and charging one district to compensate another on that account is not expressed in the title and violates article 3, section 3, providing that " No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title." (2) Because it attempts to regulate the affairs of certain school districts to the exclusion of others and violates article 3, section 7, prohibiting the passage of "any local or special law . . . . regulating the affairs of . . . . school districts. (3) Because it attempts to grant certain school districts to the exclusion of others, special and exclusive privileges, and is special legislation and contrary to article 3, section 7, forbidding the passage of "any local or special law . . . . granting to any corporation, association or individual,

any special or exclusive privilege or immunity." In Sharon Hill Borough, 140 Pa. 250, it was decided that the first section of this act provides an adequate method of adjusting the rights and liabilities of the old borough and its creditors where, as here, a new borough has been incorporated under the act of May 29, 1889, supra, out of a part of an old one. So also in the case of a controversy like the present, between the new school district of the borough of Sharon Hill (created by dividing a borough in the proceedings reported in the above case), and the old school district of Darby borough, it was ruled in Darby Borough School District's Appeal, 160 Pa. 79, that the act of 1887 in question, gives this court jurisdiction to appoint an auditor to report upon the proper adjustment of the property and indebtedness of the two school districts, and the form of a decree, etc. The same question was again decided by Judge CLAYTON in Darby and Collingdale School District, 5 Dist. Rep. 725, where it was said that this act was intended to supplement the general borough law of 1851,—the words "seventy-one" in the title being evidently a typographical error, to be read as "fifty-one,"—and to provide more fully for the adjustment of the indebtedness of boroughs, townships and school districts caused by the erection of new boroughs, than was provided in the 23d and 24th sections of the Act of 1851, P. L. 320. While the constitutionality of the act of 1887 was not raised in the cases cited, we nevertheless feel a greater hesitancy in condemning it upon that ground, than would arise had it not met with an indirect approval at the hands of a higher tribunal. But as the question of its invalidity has been squarely raised we are required to dispose of it according to our own convictions.

1. The only direct information concerning the subject of this enactment to be derived from a reading of the title is, that it is an act "providing for the adjustment of indebtedness and government of boroughs, townships and school districts affected by changes of limits of any borough in the Commonwealth." Here is nothing to indicate that the words "adjustment of indebtedness" have reference to anything more than liabilities existing against the different municipal divisions affected by the change of borough limits, prior to such change, and the apportionment of such liabilities between the new divisions

which take the places of the old ones. There is no intimation that in addition to the existing indebtedness of the character just referred to, new rights and liabilities are to be created between the new divisions on account of an unequal distribution of old borough, township or school property consequent upon a change of territorial boundaries, and that these new rights and liabilities are also to be adjusted in connection with the adjustment of the old indebtedness. Much less, where, as in cases like the present no old indebtedness existed, does the term "adjustment of indebtedness" signify a proceeding merely to value and divide the old school property and charge and credit the new districts to make up for the inequality of its actual territorial distribution. Nor by reciting that this act is a supplement and referring to the original and a supplement, does the title in question become more comprehensive, under the rule that where the subject of the supplement is germane to that of the original act, a reference to it in the title to the supplement, is sufficient notice of the subject of the supplementary enactment; for neither the original act nor its supplement referred to in the title to this act, deals in any way with the subject of valuations and distribution of municipal or school property. The act of 1879 treats of the subject of the annexation of adjacent lands to boroughs, and the only reference to school districts in the general borough law of 1851, is the 23d section, giving the court the power to declare boroughs thus created, separate school districts, and the 26th section authorizing the election of school directors. The title of an act of assembly must not only embrace the subject of the legislation but must also express the same so clearly as to give notice of the legislative purpose to those who may be specially interested therein: Road in Phœnixville, 109 Pa. 44; Rogers v. Improvement Co., 109 Pa. 109. In reference to the prohibition against the introduction into a bill, of more than one subject, it was also said in the first case cited, that in determining the unity of the subject, regard must of course be had to the ultimate object to be attained. Details leading to the accomplishment of that object are cognate to the subject of legislation and therefore a part thereof. . . . But unity of subject is not enough. The subject must be clearly expressed in the title of the bill. In view of these and the many other authorities of the same pur-

port, we are of the opinion that while it was proper for the legislature in providing for the adjustment of indebtedness in such cases, to include in the same act as cognate to that subject, the valuation and distribution of municipal property yet that the title to the act should clearly indicate such purpose ; and that as the title to the act in question furnishes no notice of that kind, the enactment is void, so far as it embraces the valuation and distribution of property belonging to the old municipalities or organizations, the creation of indebtedness in favor of and against the new ones as the case may be on that account, and the enforcement of payment thereof by taxation.

2. Equally substantial, in our opinion, is the complaint that the act of 1887 regulates the affairs of certain school districts to the exclusion of others, and is therefore a local or special law, the enactment of which is prohibited by the constitution. Under this act, where a school district is affected by the change of borough limits, the school property is to be valued and divided in certain proportions between the old and new organizations; the one to which the greater proportionate amount of school property has passed, or with which it remains, is to pay the other for the difference and a special tax may be levied to raise the money for that purpose. It affects all taxpayers of the districts concerned ; in the one case by requiring them to pay taxes to liquidate the surplus value of the school property acquired, and in the other by relieving them of taxation which would otherwise be necessary to purchase school property needed for the district. Not only this, but it changes the law of the 11th section of the Act of April 11, 1862, P. L. 471. By that act, only a new district is liable to contribute for an undue proportion of real estate and school buildings acquired from the old one, and by virtue of it the old one retaining the school property need contribute nothing therefor: Appeal of School District of Aleppo, 96 Pa. 76 ; In re Abington School District, 84 Pa. 179. Whereas, under the act in question, either the old or the new district is made liable for any excess of school property derived by it in the territorial division occurring. It therefore clearly regulates the "affairs" of the districts affected, within the recognized construction of the meaning of that word in the connection in which it is employed. See Morrison v. Bachert, 112 Pa. 322 ; Frost v. Cherry, 122 Pa. 417 ; Mont-

gomery Co. v. Commonwealth, 91 Pa. 125.   Moreover, the act
applies only to school districts affected by changes of borough
limits, and is local.   It does not and never can apply in any
way to school districts which may be affected by the change
of city or township limits without interfering with borough
boundaries, and that changes in the limits of existing school
districts and the creation of new districts will and must con-
stantly take place without interference with borough lines, is
perfectly manifest.   In all such cases the old district, under the
present law, notwithstanding the act of 1887, may retain all the
real estate and school buildings without contributing to the new
one or the taxpayers therein, whose taxes have helped to pur-
chase and erect the school property.   If an act regulating the
affairs of school districts either produces or may produce local
results, it offends against the constitution, which forbids any
attempt to regulate the affairs of school districts by local or
special laws : Chalfant v. Edwards, 173 Pa. 246 ; Appeal of City
of Scranton School District, 113 Pa. 176.

3. The views we have already expressed with reference to
this act render it unnecessary to decide whether, as claimed by
the third exception, it violates that clause of section 7, article 3,
forbidding the passage of "any local or special law . . . . grant-
ing to any corporation, association, or individual, any special or
exclusive privilege or immunity."   The balance of the clause
not here interposed and separated from the above quoted by a
comma only, is "or to any corporation, association, or indi-
vidual, the right to lay down a railroad track."   Taking the
whole clause together it would seem not to refer to municipal
or quasi municipal corporations for whom local and special leg-
islation of the character stated in this clause is substantially
prohibited by other clauses of the same section.   Upon the sub-
ject of this exception, however, we pass no opinion.   So also
the exception relating to the year of the assessment valuations
adopted by the auditor, is immaterial to the exceptant, in view
of the disposition of the case upon other grounds.

We hold that the act of 1887, in so far as it provides for the
valuation and distribution of property owned by school districts
affected by changes of borough limits, the creation of indebted-
ness on that account in favor of and against such school dis-
tricts, and the enforcement of payment of such indebtedness by

the levy and collection of special taxes, is unconstitutional and void, because the subject thereof is not clearly expressed in its title, and it attempts to regulate the affairs of certain school districts in the commonwealth to the exclusion of others, and, therefore, violates section 3 of article 3 of the constitution, providing that "No bill . . . . shall be passed containing more than one subject, which shall be clearly expressed in its title," and is also contrary to that part of section 7 of the same article, prohibiting the passage of " any local or special law . . . . regulating the affairs of . . . . school districts."

The first and second exceptions, as numbered in this opinion, to the auditor's report are sustained, and the report is set aside, in so far as it relates to the school district of the borough of Sugar Notch, and the school district of the borough of Warrior Run.

*Errors assigned* were (1) In holding that the Act of June 1, 1887, P. L. 285, is unconstitutional and void. (2) In setting aside the auditor's report in so far as it related to the school district of the borough of Sugar Notch and the borough of Warrior Run.

*B. R. Jones,* with him *G. L. Halsey,* for appellant.—There are four acts of assembly concerning the distribution of property upon the division of school districts, to wit: Act of May 8, 1854, P. L. 617 ; Act of May 8, 1855, P. L. 509 ; Act of April 11, 1862, P. L. 471; Act of 1887, P. L. 285. The latter act is applicable to school districts affected by change of limits of borough.

These acts are remedial and should receive liberal construction in order that the first and beneficial objects intended by this enactment may be promoted : Abingdon School District, 84 Pa. 179.

The act under consideration has been before the court several times : Darby v. Collingdale, 5 Dist. Rep. 725 ; Darby Borough School District's Appeal, 160 Pa. 79 ; Wade v. Oakmont Borough, 165 Pa. 479.

The subject of the act is clearly expressed in the title : Allegheny Co. Home's Appeal, 77 Pa. 77 ; Railroad Co.'s Appeal, 77 Pa. 429.

The subject of the act of 1887 is the adjustment of indebtedness and government of the boroughs, townships and school districts affected by the changes of limits of any borough in the commonwealth, and the very nature of the subject of the title of the act of 1887, to wit: "the adjustment of indebtedness" reasonably suggests that it should have the relief here contended for.

The act is germane to the acts of 1851 and 1879, and therefore a mere reference in the title that it is a supplement to these acts is sufficient: Railroad Co.'s Appeal, 77 Pa. 429; Craig v. Church, 88 Pa. 42.

Conceding that the act does regulate school affairs, there is no force in the argument that the act is local or special.

*William S. McLean,* with him *James H. Shea,* for appellee.— The subject of the act is not clearly expressed in the title: Dorsey's App., 72 Pa. 192; Beckert v. Allegheny, 85 Pa. 191; Road in Phœnixville, 109 Pa. 44; Rogers v. Mfg. Co., 109 Pa. 109.

The title to the act of 1887 gives no notice or warning to old school districts that the exemption from accounting to new districts, for an undue proportion of school property, within the limits of the old districts, is taken away by the subject of the act. There must be such notice of the subject or it offends against article 3, section 3, of the state constitution: Road in Otto Twp., 2 Pa. Superior Ct. 20.

The judgment in this case was affirmed in the Supreme Court in 181 Pa. 390. School affairs here attempted to be regulated by the act, are such affairs as clearly affect not only the school directors of the school districts falling within the purview of the act, but also the taxpayers of these districts, and these are the affairs contemplated by the constitution: Morrison v. Bachert, 112 Pa. 322; Frost v. Cherry, 122 Pa. 417; Montgomery v. Com., 91 Pa. 125.

It is a local law. It only applies to school districts affected by change of limits of any borough of the commonwealth.

OPINION BY PORTER, J., February 19, 1898:

In the opinion filed by the court below the questions involved in this case have been met fairly, considered fully and decided

rightly. Little remains but to reaffirm the propositions there laid down, respecting the application of the act of June 1, 1887, to the present case.

The title to the act is "A further Supplement to an Act . . . . entitled, 'A Supplement to an Act for the regulation of boroughs,' . . . . providing for the adjustment of indebtedness and government of the boroughs, townships and school districts affected by changes ·of limits of any borough in the Commonwealth."

Under this caption the act provides that whenever proceedings shall be commenced for the purpose of changing the limits of any borough by detaching therefrom any territory included therein, and the same shall have been approved by the grand jury, the court, before entering decree, shall appoint an auditor who shall ascertain the existing liabilities of the several school districts which may be affected by the said change of limits ; the amount and value of the property owned by each, and the amount and value of the same passing to and from each school district; the assessed valuation of the property liable to taxation as shown by the last annual assessment, and within the limits of the part detached. The proceeding culminates in a report to the court by the auditor of a form of decree "adjusting the liabilities for all indebtedness and the value of property held or acquired by each, justly and equitably, upon the said borough, township and school district respectively." The remaining part of the section is as follows : " And said Court shall be authorized to direct the amounts that shall be paid one to the other, and the time and mode of payment, and, if necessary to a proper and just adjustment of the same, may order and direct a special tax to be levied upon the property so annexed or detached from said borough, for the payment of so much of the indebtedness as may be awarded against it and direct how the same shall be assessed and collected."

The title of the act contains no proper notice of the proceedings created by its provisions. It does not indicate that a new relation of debtor and. creditor, as between the old and the new districts, would arise thereunder. The words "adjustment of indebtedness " do not describe or give notice of the creation of a liability. In the present case there was no indebtedness existing at the time of the projected severance of relation.

The indebtedness to adjust sprang into being by operation of the proceeding begun for its alleged adjustment. There is no clear indication that provision is made for the valuation and distribution of property owned by school districts affected by change of borough limits.

The lack of clearness in the title is not helped by its reference to the original act and the former supplement thereto. The act of April 3, 1851, is entitled, "An Act regulating boroughs," and in the body of it refers only incidentally to school matters to the extent of giving power to the court to declare boroughs separate school districts, and authorizing the election of school directors. The supplement of June 11, 1879, which is entitled merely "A Supplement to an Act for the regulation of boroughs," does not refer to school districts.

While the title of a bill need not be an absolute index of its contents, yet it must clearly express the one subject which the act shall contain, and must fairly give notice of the legislative purpose to those interested. We are of opinion that in this respect the act fails to meet the requirements of the constitutional provision.

We hold the act unconstitutional on a second ground. The constitution prohibits the passage of "any local or special law . . . . regulating the affairs of . . . . school districts." In order to bring this case within the constitutional prohibition the act must be both an attempt to regulate the affairs of school districts and special or local in character.

It makes provision for the valuation and division of school property; it imposes burdens on old districts from which they were theretofore relieved; it empowers the court to compel directors to levy a special tax for the payment of indebtedness that may be created if the act is upheld; it empowers the court to enforce its decree against the directors. These are such affairs as affect the people of the particular district: Frost v. Cherry, 122 Pa. 417, and indicate that the act comes within the term "affairs of school districts," as used in the constitution.

The act is local. It applies only to school districts affected by changes of borough limits. It does not apply to school districts affected by changes of city or township limits without interfering with borough boundaries. In the latter cases the old district will retain the real estate and buildings without

contributing to the new district. This piece of legislation therefore produces or may produce local results, and thus offends against the provision of the constitution: Appeal of the city of Scranton, 113 Pa. 176; Chalfant v. Edwards, 173 Pa. 246.

The act under consideration has been twice before the Supreme Court. The question of its constitutionality has not, however, been raised. In neither of the cases referred to do we find anything said by the Supreme Court which should conflict with the result we have reached, nor which should, we believe, prevent that court from itself arriving at a similar conclusion should the question be presented to it.

The decree of the court below is affirmed.