## Lehigh Valley Coal Co.'s Appeal.

*Constitution—Local acts—Roads—Act of June 12, 1893.*

A law which is general in character and applies to all townships throughout the commonwealth, is not unconstitutional because, by its adoption in some townships and not in others, local results may be produced.

The act of June 12, 1893, P. L. 451, entitled an act " enabling the taxpayers of townships and road districts to contract for making at their own expense the roads, and paying salaries of township or road district officers, and thereby preventing the levy and collection of road taxes therein," does not violate art. 3, § 7 of the constitution relating to local and special legislation.

Argued April 11, 1894. Appeal, No. 482, Jan. T., 1894, from order of Q. S. Luzerne Co., Jan. T., 1894, No. 227, on demurrer to petition. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Petition for leave to enter into contract with supervisors to construct township roads.

The petition of appellant alleged :

" That it is the owner of property assessed and taxed for road purposes in the township of Plains. That the approximate number of miles of public road in said township are twenty, and your petitioner is desirous and is able to lay out, make, open, amend and repair the public highways and bridges of said township or road district wholly at its own expense for the ensuing township fiscal year beginning March 5, 1894, and

to pay the other expenses of said township or road district as provided for under the provisions of the act of June 12, 1893, entitled, 'An act enabling the taxpayers of townships and road districts to contract for making at their own expense the roads and paying the salaries of township or road district offi-cers and thereby preventing the levy and collection of road taxes therein,' without any right against or claim upon said township or road district for or by reason of the materials, labor or moneys so furnished.

"Your petitioner therefore prays the court for an order or decree to the supervisors of said Plains township on behalf of such township to enter into a contract with the said Lehigh Valley Coal Company, whereby your petitioner will bind itself:

"1. To open, make, amend and repair the public highways and bridges of said township for the fiscal year beginning March 5, 1894, in a lawful and workmanlike manner wholly at the expense of your said petitioner and without creating there-by any claim upon or right against said township for or by reason of the materials, labor or money for such purpose em-ployed.

"2. To indemnify and save harmless the said township from all claim for damage, cost or expense of whatever kind for or by reason of any act or omission of said petitioner whereby any claim, suit or other demand may be set up or recovered against the said township.

"3. To pay within sixty days from said March 5, 1894, to the township clerk of said township, the sum of fifty dollars, to the auditors of said township each the sum of twenty-five dollars, to an attorney to be selected by the supervisors of said township as counsel for said township the sum of fifty dollars, and to the supervisors of said township each the sum of two hundred and fifty dollars. In consideration of which obliga-tions to be assumed and performed by said petitioner the said supervisors on behalf of such township will stipulate that the said township will not assess, levy or collect any taxes for road purposes during the fiscal year beginning March, 1894." ·

The supervisors demurred to the petition, on the ground that the act of June 12, 1893, P. L. 451, was local and uncon-stitutional. The court, in an opinion by RICE, P. J., sustained the demurrer and dismissed the petition : 3 Dist. R. 610.

*Error assigned* was above order, quoting it.

*H. W. Palmer, D. A. Fell, Jr., F. E. Wheaton* and *George R. Bedford* with him, for appellant.—Nothing but a clear violation of the constitution will justify the courts in pronouncing an act of the legislature unconstitutional and void: R. R. v. Riblet, 66 Pa. 164; Craig v. Church, 88 Pa. 42.

The act in question is general in form, and it is applicable by its terms to all the townships of the commonwealth, and to any taxpayer of any township.

Boroughs and townships are created by general laws, and are the proper subjects of appropriate, independent, general legislation as such: Evans v. Phillipi, 117 Pa. 237; Weinman v. Ry., 118 Pa. 202; Ayars's Ap., 122 Pa. 281.

A statute general in form will not be construed to be local because owing to unrepealed local acts upon the same subject it cannot have a general application: Evans v. Phillipi, 117 Pa. 237.

The statute does not contain any disabling and excluding enactment: City of Scranton School District's Ap., 113 Pa. 176; Reading v. Savage, 124 Pa. 328.

Art. 3, § 7 of the constitution is a new provision taken in part from the constitution of Illinois. In that commonwealth, as in this, on the question of special legislation, the distinction herein referred to has been plainly indicated by the court of last resort: Hawthorn v. People, 109 Ill. 311; and case in 100 Ill. 423.

In Scranton City School District's Ap., 113 Pa. 176, and cases in the same line before and since, the test of constitutionality has always turned upon the question of general applicability of the act as a law, and never upon the practical application of its provisions, nor the motives of the legislature, nor the wisdom of the statute: State v. Parsons, 40 N. J. L. 123.

*M. H. McAniff* and *John McGahren, John T. Lenahan* with them, for appellee.—It is clear from an analysis of the authorities in this state that the act of June 12, 1893, P. L. 451, is special and local and therefore offends against art. 3, § 7 of the constitution.

All the authorities are to the effect that if local results either

are or may be produced by legislation it is in conflict with the constitution and therefore void: Com. v. Patton, 88 Pa. 358; Scowden's Ap., 96 Pa. 422; Frost v. Cherry, 122 Pa. 417; Com. v. Reynolds, 137 Pa. 389; Scranton v. Silkman, 113 Pa. 191; Ayars's Ap., 122 Pa. 266; Com. v. Denworth, 145 Pa. 172.

OPINION BY MR. JUSTICE DEAN, Oct. 1, 1894:

On the 12th of June, 1893, an act "Enabling the taxpayers of townships and road districts to contract for making at their own expense the roads, and paying salaries of township or road district officers, and thereby preventing the levy and collection of road tax therein," was approved by the governor. It was provided by the act:

That any one or more taxpayers of any township might acquire the right to make and repair the roads of the township on petition to the court of quarter sessions, setting forth certain facts, such as, that the petitioners are owners of property and taxpayers; the approximate number of miles of roads in the township; ability of petitioners to make and repair the roads; and further, filing a bond in a sum equal to five hundred dollars for every mile of road in the township with approved sureties; thereupon, the court, on being satisfied of the good faith of petitioners, should grant the prayer, and direct the road supervisors to enter into a contract with the petitioners for the making and repair of the roads of the township for the ensuing fiscal year.

In the case before us, the petitioner, the Lehigh Valley Coal Company, presented its petition to the court, for right to make and repair the roads of Plains township, at January sessions, 1894, having complied with the act as to notice, bond, and all other requirements. The supervisors, auditors and township clerk filed a demurrer to the petition, on the ground that the act was unconstitutional, in that it was in conflict with sec. 7, art. III, on legislation. The prohibitions of that section, material here, are as follows: "The legislature shall not pass any local or special law . . . . regulating the affairs of counties, cities, townships, wards, boroughs or school districts; . . . . authorizing the laying out, opening, altering or maintaining roads, highways, streets, or alleys; . . . . nor shall the general assembly indirectly enact such special or local law by the partial repeal of a general law."

It is not questioned that townships are a class of municipal subdivisions of the state, and laws applicable to all townships alike are general and constitutional laws. But it is argued, this law would be productive of local results, and therefore is a local law. That is, some townships would take advantage of its provisions, and contract for making and repairing their roads, while others would go on under the old law, and have the work done as heretofore, directly by the supervisors. Hence, in different townships, the work would be done under two different systems, depending on the notions of the taxpayers of the many townships of the commonwealth. But this fact, even if it were undoubted, would not necessarily be local legislation. Nearly all the laws which, since its adoption, have been declared obnoxious to the constitutional inhibition of sec. 7, article III, have been those which sought to accomplish a local result under the guise of a nominally general law, and which, from the language of the statute and its subject, could have no other result; or which, from the very nature of the case, could not have a general application. In these cases, the act, though general in terms, was so worded that it could only relate to some members of a class, which members were identified by a geographical location, a territorial area, or a limit of population, which made them beneficiaries of the law, and excluded all others of the same class. But there is not a single township in the state which does not come under this law. If the act had been the first one passed on the subject, and had enacted that, in all the townships of the state, public roads should be made and kept in repair by the supervisors : 1. By the assessment of a money tax, collected and expended by them ; 2, or by the labor of the taxpayers of each township to the value of their tax, under the direction of the supervisors ; 3, or by contract of supervisors with a taxpayer or taxpayers, with the approval of the court of quarter sessions, the law would, unquestionably, have been general. But, there being three different methods of doing the same thing, the roads might have been made and repaired in three different ways by three adjoining townships. The duty of each township would have been the same, to make and repair the roads within its boundaries ; the object of the law, with respect to each, would have been the same, to secure reasonably good roads. That

any township might adopt any one of three lawful methods to effect the general purpose, it seems to us, could not change its general character. Here, not a single township is excluded from the operation of the law because of any local peculiarity. That taxpayers will differ in opinion as to benefits from it, and, in consequence, some townships will adopt the new method, while others adhere to the old, is not a local result, but merely an exhibition of that tendency of the human mind to reach different political conclusions from the same facts. It has never been intimated that the general borough acts of 1834 and 1851 were local acts. Yet, under the operation of these laws, some villages or towns, by their petition to the court, become incorporated boroughs; others, of as large and compact a population, prefer to remain part of the township within whose limits they are built; and there are to-day small towns within the same township boundaries, one a borough, the other, apparently in all respects the same in its wants and population, called by a distinct name, yet still part of the township. There is nothing in the borough law relating to the organization of such municipalities, which produces this result; it is not local, for one is just as eligible to borough privileges as the other. It arises alone from a difference of opinion in the minds of the residents of the two towns, as to the benefits to be derived from borough organization. The law is general and tends to uniformity; but it has failed to produce uniformity in men's minds on a political question. All men situated alike do not think alike, and no law can make them do so. Experience may convince, and every day is convincing, compact populous communities that a borough organization best promotes the interests and comfort of the people, and eventually there will be practical uniformity, and the intent of the general law will have been attained. But if one of the communities referred to desired to become a borough, and because of some local peculiarity, such as being on high land or low land, or near a stream of water, or too far from it, was not eligible to borough privileges, the act of 1851 would not be a general borough law; in its operations, the results would necessarily be local, in that it included some of a class, and excluded others.

The 34th section of the road law of 1834, giving taxpayers the option of working out taxes, has not resulted in uniformity.

In some townships the taxes are paid almost wholly in cash, and the work is done by laborers employed by the supervisor; in others, the taxes are worked out, and very little cash is paid. Where the taxes are paid in money, the supervisors often let out the construction of new roads by contract. And this, in Childs v. Brown Twp., 40 Pa. 332, was decided by this court to be strictly lawful.

It would be hard to find greater differences of method under a general law, than in boroughs organized under the act of 1851, before referred to. Under this act, the town council have authority to make such laws and regulations as they shall deem necessary for the good order and government of the borough. Scarcely any two of them are exactly alike in laws or results. In some, all public work on the streets, alleys and sewers is contracted for; in others, it is done by day's work, under the direct control and supervision of the authorities. Some construct waterworks, gasworks and electric plants; in others, these are owned and operated by private corporations. But all are organized under a general law, with that liberty of selection of ways and means to reach the end of good government, as is entirely consistent with the fundamental law.

Testing this law by its effect, it operates upon all townships whose taxpayers choose to invoke it in precisely the same manner. It in substance does nothing more than permit the taxpayers to contract for all road work, where before nothing could be contracted, except such as the taxpayer did not choose to do. The duty of supervision in the supervisor remains the same.

We may say here that, on this subject, we adhere to the principle of construction announced in Ruan St., 132 Pa. 257. "In order that a given act of assembly relating to a class of cities may escape the charge of being a local law . . . . it is necessary it should be applicable to all members of the class to which it relates, and must be directed to the existence and regulation of municipal powers, and to matters of local government." Or as is said in Wheeler v. Phila., 77 Pa. 348: "A statute which relates to persons or things as a class, is a general law, while a statute which relates to particular persons or things of a class, is special, and comes within the constitutional provision."

There is no evidence here, from the provisions of this act, or from facts of common observation with respect to roads, that it

was intended to have a local effect. That, as yet, it has not been put in force, except in a few townships, does not prove that it will not become general in its operations. It only became a law June 12, 1893; necessarily, on account of the lateness of the season, it could not have been put in operation before 1894. On February 6, 1894, the appellants presented their petition; the constitutionality of the law was at once attacked by appellees. This was enough to deter others from any immediate movement to adopt the new method. Prudent taxpayers may wisely await the event of litigation between others, before involving themselves in a lawsuit.

It is urged, with much force, that the law is unwise, and cannot result in improvement of public roads, or in any advantage to the taxpayer. This may be; if so, no experience has yet demonstrated the fact, and we have not powers of prevision. But, even if this were conclusively shown, the legislature must repeal a constitutional law, not we. The subject of the act, improvement of roads, is one that has been, of late years, a matter of agitation and discussion among the people. The general assembly, doubtless prompted by public opinion, embodied a public suggestion into a law of the commonwealth. We ought not to strike down a law thus enacted, unless it be palpably in conflict with the constitution.

The constitutionality of this act, is not, it seems to us, even doubtful, therefore the decree of the court below is reversed, and a procedendo awarded.