# Commonwealth ex rel. *v.* Woodring, Appellant.

# Montgomery County Medical Society's Petition.

# Diller's Petition.

*Constitutional law—Local legislation—Vote of electors for act to become effective—Creation of county hospitals—Act of March 23, 1925, P. L. 65.*

1. Statutes providing for a popular vote before municipal divisions of the Commonwealth may take advantage of them, are constitutional.

2. Statutes that are general in character and apply to all municipal divisions throughout the Commonwealth are not unconstitutional because, by their adoption in some of the divisions and not in others, local results may be produced.

3. The Act of March 23, 1925, P. L. 65, providing for the establishment of tuberculosis hospitals by •the several counties of the Commonwealth is not unconstitutional as local legislation in violation of article III, section 7, of the Constitution.

4. The fact that the act requires the vote of a majority of the electors of each county in favor of establishing a hospital, does not make it local or special legislation.

*Constitutional law—Delegation of power to special commission —Act of March 23, 1925, P. L. 65.*

5. The Act of March 23, 1925, P. L. 65, does not offend against article III, section 20, of the Constitution, inasmuch as the advisory board for tuberculosis hospitals provided for therein is not a special commission to. which is delegated the power to make, supervise or interfere with a municipal improvement or to perform a municipal function. The functions of the board under the act are purely advisory.

*Statutes—Validating unconstitutional statute—Acts of May 20, 1921, P. L. 944, and March 23, 1925, P. L. 65.*

6. The legislature may validate acts done under an unconstitutional statute if the validating acts do not in themselves come under the constitutional ban.

7. The legislature had the right to enact the 12th section of the Act of March 23, 1925, P. L. 65, validating all proceedings and elections held under the Act of May 20, 1921, P. L. 944, authorizing the establishment of tuberculosis hospitals.

438 COMMONWEALTH ex rel. *v.* WOODRING, Aplnt.

*Public officers—County officers—Members of advisory board of tuberculosis hospitals—Act of March 23, 1925, P. L. 65—Constitutional law.*

8. The members of the advisory board of tuberculosis hospitals provided for by the Act of March 23, 1925, P. L. 65, are not county officers.

*Statutes—Construction of "may" "shall"—Words and phrases —County hospitals for tuberculosis—Act of March 23, 1925, section 12, P. L. 65.*

9. In section 12 of the Act of March 23, 1925, P. L. 65, which validates proceedings and elections under the unconstitutional Act of May 20, 1921, P. L. 944, and which provides that "such proceedings and hospitals may be completed, and the said hospital may thereafter be managed and operated in accordance with the provisions of this act," the word "may" is to be construed as permissive and not mandatory.

10. Under section 12, the county commissioners are given authority to complete the proceedings taken under the unconstitutional act and to erect a hospital, if in their judgment that course ought to be pursued, but they are not required to do so.

11. In construing a statute, where there is a change in the method of expression, the presumption, usually of great force, is that the intention is to give to the later words a different meaning from that formerly used.

*Hospitals—Tuberculosis hospitals—Acts of March 23, 1925, P. L. 65, and May 14, 1925, section 1200, P. L. 762.*

12. Tuberculosis hospitals may be established either under the Act of March 23, 1925, P. L. 65, or May 14, 1925, P. L. 762.

Argued February 8, 1927.  Before FRAZER, WALLING, KEPHART and SCHAFFER, JJ.

Appeal, No. 56, Jan. T., 1927, by defendants, from order of C. P. Northampton Co., June T., 1926, No. 48, awarding writ of mandamus, in case of Commonwealth ex rel. v. Alfred A. Woodring et al., commissioners of Northampton Co.  Reversed.

Appeal, No. 77, Jan. T., 1927, by Montgomery Co., from order of C. P. Montgomery Co., April T., 1925, No. 8, refusing to vacate appointment of advisory board for County Tuberculosis Hospital, in case of Petition of Montgomery County Medical Society et al.  Reversed.

Appeal, No. 98, Jan. T., 1927, by Howard W. Diller et al., from order of C. P. Schuylkill Co., Nov. T., 1925, No. 685, refusing to appoint advisory board for County Tuberculosis Hospital, in case of Petition of Howard W. Diller et al. Affirmed.

Petition for mandamus in No. 56, Jan. T., 1927.

Mandamus awarded. Defendants, commissioners of Northampton County, appealed.

Petition to vacate appointment of advisory board in No. 77, Jan. T., 1927.

Petition refused. Montgomery County appealed.

Petition for appointment of advisory board in No. 98, Jan. T., 1927.

Petition refused. Petitioners appealed.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were various orders, quoting records.

*Albert F. Kahn,* for appellants, in No. 56.—The election held in 1923 was without lawful authority, was void, and its manifold defects cannot be made effective and binding by subsequent legislation: Chicago, etc., R. R. v. Hackett, 238 U. S. 559; Shoemaker v. Harrisburg, 122 Pa. 285; Ayars's App., 122 Pa. 266.

Section 12 of Act March 23, 1925, is permissive or directory and not mandatory on county commissioners: Fedorowicz v. Brobst, 254 Pa. 338; Com. v. Boro., 272 Pa. 189; Investor's Realty Co. v. Harrisburg, 281 Pa. 200; Com. ex rel. v. Bearstler, 85 Pa. Superior Ct. 228.

The Act of 1925 is unconstitutional: Perkins v. Phila., 156 Pa. 554; Porter v. Shields, 200 Pa. 241; Stratton v. Allegheny Co., 245 Pa. 519; Moil v. Morrow, 253 Pa. 442; McKeown's Petition, 237 Pa. 626; Scranton School District's App., 113 Pa. 176; Frost v. Cherry, 122 Pa. 417.

*T. McKeen Chidsey,* for appellee, in No. 56.—Curative legislation is expressly entitled to every presumption of validity and courts are loath to upset it: Kennedy v. Meyer, 259 Pa. 306; Buffalo Branch Mut. Film Corp. v. Breitinger, 250 Pa. 225; Swartz v. Boro., 237 Pa. 473; Devers v. York, 150 Pa. 208; Melick v. Williamsport, 162 Pa. 408.

Assuming, for the purpose of argument only, that acts done by the board of trustees under the prior Act of 1921 cannot be ratified, all acts done under said act but not done by the said board of trustees have been validly ratified by section 12 of the Act of 1925.

The 12th section of the Act of 1925, is mandatory: Pike Twp. School Directors, 15 Pa. Dist. R. 565; Com. v. Pittsburgh, 34 Pa. 496; Investors Realty Co. v. Harrisburg, 281 Pa. 200; Weiss v. Swift & Co., 36 Pa. Superior Ct. 376.

The Act of 1925 is constitutional: Houseman v. Com., 100 Pa. 222; Com. v. Likely, 267 Pa. 310; Muir v. Madden, 286 Pa. 233; Buffalo Branch Mut. F. Corp. v. Breitinger, 250 Pa. 225; Lehigh Val. Coal Co's App., 164 Pa. 44; Rose v. Beaver Co., 204 Pa. 372.

*Russell J. Brownback,* with him *Henry M. Brownback,* for appellant, Montgomery County, in No. 77.

*Irvin P. Knipe,* for appellees, in No. 77.

*Wm. G. Wells* and *M. M. Burke,* for appellants, in No. 98, cited: Blankenburg v. Black, 200 Pa. 629; Morrison v. Bachert, 112 Pa. 322; Evans v. Phillipi, 117 Pa. 226; Stratton v. Allegheny Co., 245 Pa. 519; Com. v. Collier, 213 Pa. 138.

*Arthur L. Shay,* Special Counsel, with him *C. A. Snyder,* County Solicitor, for appellee, Schuylkill County, in No. 98.—The Act of 1925 is unconstitutional: Perkins v. Phila., 156 Pa. 554; Moll v. Morrow, 253 Pa. 442; Com.

v. Smith, 9 Pa. Dist. R. 250; Porter v. Shields, 200 Pa. 241.

*Walter L. Hill,* Special Deputy Attorney General, for Commonwealth, in No. 98.

OPINION BY MR. JUSTICE SCHAFFER, May 9, 1927:

In these proceedings we are to determine whether the Act of March 23, 1925, P. L. 65, providing for the establishment of tuberculosis hospitals by the several counties of the Commonwealth is constitutional. It was determined not to be by the Court of Common Pleas of Schuylkill County, whereas its validity was upheld by the Common Pleas of Northampton and of Montgomery.

The grounds of attack are (1) that owing to the feature in it requiring the vote of a majority of the electors of each county in favor of the establishment of a hospital it is special legislation in contravention of article III, section 7 of the Constitution providing that "The General Assembly shall not pass any local or special law regulating the affairs of counties, cities, townships, wards, boroughs or school districts"; (2) that because of a provision requiring the court to appoint an advisory board of five members to aid in the management and operation of each hospital it offends against article III, section 20, which provides "The General Assembly shall not delegate to any special commission......any power to make, supervise or interfere with any municipal improvement......or to levy taxes or perform any municipal function whatever"; (3) that the legislature was without power by a subsequent enactment to validate elections in favor of the establishment of such hospitals held under a previous statute, that of May 20, 1921, P. L. 944, which had been declared unconstitutional; (4) that the members of the advisory board provided for in the act are county officers and as such must be elected and not appointed, section 2 of article XIV of the Constitution so prescribing. There is a further question raised

by some of the appellants as to whether section 12 of the act is permissive or mandatory.

The earlier Act of 1921 had been declared unconstitutional by the Court of Common Pleas of Schuylkill County from whose decision no appeal was taken. That act was specifically repealed by the one with which we are now concerned.

Is the act in question a local law because it provides that the county commissioners shall proceed to establish a county hospital for the treatment of persons afflicted with tuberculosis whenever one hundred or more citizens, residents of the county, have petitioned them so to do and if a majority of the voters at the next general or municipal election thereafter shall vote in favor of its establishment? The act is entitled "An act authorizing and regulating the establishment and operation by counties of hospitals for the treatment of persons afflicted with tuberculosis," etc. It will thus be seen that the law covers every county. Whether they will proceed under its terms to establish a hospital is the only thing the voters by their ballots decide. They cannot alter or restrict the scope of the statute; it is existent, for them to avail themselves of its terms if they so desire. The argument, made by those seeking to set the law aside, that it is local because it may produce the result that there will be tuberculosis hospitals in some counties and not in others, does not meet the question before us either generally or under our decisions. Statutes providing for a popular vote before municipal divisions of the Commonwealth may take advantage of them are not a novelty in our legislation. The Act of June 26, 1895, P. L. 336, providing for the permanent improvement of roads in the several counties of the Commonwealth was attacked as local or special legislation, on the ground here set up, in Middletown Road, 15 Pa. Superior Ct. 167. The opinion of Judge RICE in that proceeding illuminates the proposition we are now considering. Speaking of the cases of Frost v. Cherry, 122 Pa. 417,

and Com. v. Denworth, 145 Pa. 172, cited to us as supporting a conclusion of unconstitutionality, he said (p. 174) : "We do not think the act is parallel with the acts construed in those cases. Its vitality as a law does not in a true sense depend upon the exercise of an option by the county commissioners. It is in force in every county of the Commonwealth, just as the law authorizing boroughs to pave streets, to lay sewers and to make other improvements is in force in every borough of the Commonwealth, although the corporate officers of some boroughs may in the exercise of their discretion decline to avail the boroughs of its privileges, or may pave some streets and leave others unpaved. The law providing for the taking of toll bridges for public use and making the same county bridges is not self-executing. Unless the persons designated in the act institute the proceedings, whereby the expediency of making a particular bridge a county bridge is to be determined, the law will not of its own force make it a county bridge. The result is that in some counties all toll bridges are 'freed,' in others none are, and in still others some are made county bridges and others are not. But surely it cannot be contended that it is a local or special law because its provisions do not of their own force make all toll bridges in the State, or all toll bridges in a county, county bridges. Innumerable other illustrations might be given to show the distinction between an act which is not to go into effect in a county until its provisions have been accepted by the county commissioners, and an act which provides that the proceedings for accomplishing its objects in particular cases shall be instituted by them. To hold that the act is special because the establishment of a county road requires the approval of the county commissioners, the grand jury and the court of the county, and, perchance, as particular cases arise they may not give their approval, would be to declare a principle which would invalidate numberless laws on the statute books concerning the constitutionality of which no question has ever

been raised. It would be in conflict with the ruling in Lehigh Valley Coal Co.'s App., 164 Pa. 44, and would put a construction on this provision of the Constitution which is not warranted by any decision that has come to our notice." The same line of reasoning was expressed in Lehigh Valley Coal Co.'s App., 164 Pa. 44, in which the constitutionality of the Act of June 12, 1893, P. L. 451, was upheld, the principle being laid down that a law which is general in character and applies to all townships throughout the Commonwealth, is not unconstitutional because, by its adoption in some townships and not in others, local results may be produced. Speaking for the court, Mr. Justice DEAN said (p. 48): "There is not a single township in the State which does not come under this law......(p. 49) That taxpayers will differ in opinion as to benefits from it, and, in consequence, some townships will adopt the new method, while others adhere to the old, is not a local result, but merely an exhibition of that tendency of the human mind to reach different political conclusions from the same facts."

In Rose v. Beaver Co., 204 Pa. 372, the constitutionality of the Act of June 4, 1879, P. L. 78, creating poor districts was upheld, this court adopting the opinion of the Superior Court, in which it was said, referring to the assault on the statute on the ground that it was local and special in that it required a vote of the qualified electors of each county to determine whether or not the county should have a poorhouse (p. 376): "The objection to the bill that it is not general in its application is not well founded. It relates to every county within the Commonwealth......There is no similarity between this act and that of June 23, 1885, P. L. 142, relating to the repeal of section 1 of the Fence Law of 1700, 1 Sm. L. 13. The law itself in that case was not to become effective within the limits of any county unless so determined by a vote of the people, and, inasmuch as the vote might be in favor of the repeal in one county and against it in

another, the operation of the law would become local, and it was so held in Frost v. Cherry, 122 Pa. 417; but in this case it is not the question of the operation of the law which is left to a vote of the people, but simply the question of the purchase of real estate under its provisions, the law remaining in force within the county whether the vote be for or against the purchase of such real estate." This is the precise situation under the act we are now considering.

In the Scranton School District Case, 113 Pa. 176, the act in question permitted a majority of the members of council in cities of the third class to prescribe a method of taxation that might not prevail in other third-class cities; in Frost v. Cherry, a majority of the people in any county could under the act there passed upon prescribe a law respecting fences which might be different from the Fence Law in other counties. In Reading v. Savage, 124 Pa. 328, the Scranton School District Case was reviewed and it was said that the act there in question was a disabling and excluding enactment and the difference between such an act and one which is enabling was pointed out. In Locke's App., 72 Pa. 491, and McGonnell's License, 209 Pa. 327, it was said that "The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." We are unhesitating in our conclusion that the cases upon which those whose position is adverse to the constitutionality of the act we are now considering rely for the proposition that it is local and special (the Scranton School District Case, Frost v. Cherry, and Com. v. Denworth, 145 Pa. 172) are not in point and that the other cases herein adverted to and quoted from determine the constitutionality of the act on this phase of the attack.

This brings us to the second contention, that the act offends against article III, section 20, of the Constitution, because the advisory board provided for therein is

a special commission to which is delegated the power to make, supervise or interfere with a municipal improvement and to perform a municipal function. It would seem that the very terms of the act negative this contention. It provides that the county commissioners shall acquire the site for the hospital if the vote of the electors is favorable to its establishment and that the court of common pleas shall appoint an advisory board of five members whose duty it shall be to meet, to visit and inspect the hospital, to keep in close touch with its management and operation, and to make such recommendations and suggestions to the county commissioners for changes or improvements therein as may be deemed advisable and to render an annual report thereof to the commissioners. The act provides for consultations by the commissioners with the advisory board for the location of the site, but that the hospital shall be constructed by contracts let by the commissioners. It prescribes that they may, after consultation with the advisory board, employ a superintendent, physicians, nurses and other employees and fix their compensation and that the rules for the management of the hospital shall be made by the commissioners after consultation with the advisory board. Admission to the hospital is by the county commissioners and exclusion therefrom is in their hands, as is its financing. It is true the advisory board each year is to furnish to the commissioners and the county controller a schedule of expenses deemed necessary for the maintenance and operation of the hospital but the appropriation therefor is to be such as shall be deemed sufficient by the commissioners, who are to levy the tax to produce the necessary funds, and, on their warrants, countersigned by the county controller, all disbursements are to be made.

The functions, therefore, of the board are purely advisory. It would be difficult indeed to reach the conclusion either that the board is a special commission or that to it any power is delegated "to make, supervise or in-

terfere with any municipal improvement or to perform any municipal function." It would seem to be a proper thing, in this highly specialized work of caring for persons afflicted with tuberculosis, that the county commissioners should be advised by a duly qualified board.

The cases cited to us as supporting the argument that the act is unconstitutional, in the respect we are now considering, such as Perkins v. Phila., 156 Pa. 554; Porter v. Shields, 200 Pa. 241, and Moll v. Morrow, 253 Pa. 442, are not in point because the statutes reviewed are not parallel with the one before us on the conferring of powers. In the instant controversy the advisory board is without power; in the cases cited powers were conferred, in the Perkins Case to control the public buildings of Philadelphia, in Porter v. Shields, on side path commissioners over part of the public highways, and in Moll v. Morrow, to administer part of the police affairs of a city. We, therefore, conclude that the act is not unconstitutional as violating article III, section 20.

The third position assumed against the act is that the legislature was without power by a subsequent enactment to validate elections, in favor of the establishment of tuberculosis hospitals held under a previous statute which had been declared unconstitutional, and acts done thereunder. The 12th section of the act validates all proceedings and elections held under the Act of May 20, 1921, P. L. 944, authorizing the establishment of such hospitals. We think it might well be considered a closed rule that the legislature can validate acts done under an unconstitutional bill if they do not in themselves come under the constitutional ban and are such as the lawmakers could have previously authorized by constitutional enactments: Donley v. City of Pittsburgh, 147 Pa. 348; Devers v. York, 150 Pa. 208; Melick v. Williamsport, 162 Pa. 408; Chester v. Pennell, 169 Pa. 300; Swartz v. Carlisle Boro., 237 Pa. 473; Kennedy v. Meyer, 259 Pa. 306.

The fourth reason assigned against the validity of the legislation that the members of the advisory board therein provided for are county officers, and therefore must be elected and not appointed, merits no discussion as manifestly the members of the board are not county officers.

There remains for consideration the question of the force of the word "may," as used in the 12th section of the act, and its application to the facts in the cases now before us. The statute is entitled "An act *authorizing* and regulating the establishment and operation......of hospitals," etc. But with the exception of the use of the word "may" in section 6, which states that the county commissioners may employ a superintendent, physicians, nurses and other employees, all other sections, down to the 12th, use the mandatory "shall." Section 12 validates proceedings and elections, previously held under the unconstitutional Act of 1921, for the erection of the same sort of hospitals authorized by the act in which this section appears; at the end of the section it directs that "such proceedings and hospital *may* be completed, and the said hospital *may* thereafter be managed and operated in accordance with the provisions of this act." In construing the word "may" as it appears in the language just quoted, and in applying such language to the facts in the cases now before us, it must be kept in mind that none of the antecedent proceedings for the hospitals here in question was under the Act of 1925, and that section 12 of that act does not deal with hospitals the proceedings for which were commenced under it. The section deals only with those where the antecedent proceedings were under the prior Act of 1921. With these facts in mind it becomes quite clear that, although the word "may," when connected with powers given to public functionaries, is ofttimes given the force of "shall" (Endlich on Interpretation of Statutes, section 310; Com. ex rel. v. Select and Common Councils of Pittsburgh, 34 Pa. 496, 513; Words & Phrases, 1st Series, vol. 5, page 4420, 2d Series, vol. 3, page 336), yet here it

manifestly was used in the permissive rather than the mandatory sense. In other words, the legislature evidently intended to say that where proceedings had been taken under the prior unconstitutional act, the public authorities are given permission to complete such proceedings and erect a hospital if in their judgment that course ought to be pursued.

This conclusion is buttressed by another rule of construction, viz., that where, in an agreement, will or statute there is a change in the method of expression, the presumption, usually of great force, is that the intention was to give to the later words a different meaning from those formerly used. Hence, when the legislature said in the Act of 1925, that certain things "shall" be done, and later, that certain others "may" be done, the presumption is that it meant just what it said, else why did it not continue the use of "shall?" The authorities last cited do not alter this conclusion; they simply say that when, for the public good, public officials are given power to do a given thing, the law will presume it was intended that they should do it, but this conclusion always falls before an evident intent to the contrary. Here it cannot be said that the act intended the compulsory erection of a hospital voted for under the prior unconstitutional statute, whether or not the county in the light of present day conditions is able to pay for it without great oppression upon the taxpayers, but rather that it was intended, as the title to the statute says, to "authorize" it, if and when it can properly be done without oppression.

In determining that under the Act of 1925 in those counties where proceedings have been carried on and action has been taken in pursuance of the Act of 1921, the commissioners may, if in their judgment they should, proceed with the erection of a hospital, but are not required so to do, we are not classifying the counties of the State, because in all counties under the Act of 1925, proceedings may be had to compel the erection of hospitals. All that we determine is that in those counties where ac-

tion was taken under the Act of 1921, matters may go forward, where there has been a vote in favor of the establishment of a hospital under that act, if the commissioners shall determine it to be proper to do so. If they otherwise decide, there is opportunity for the electors to vote again on the project under the Act of 1925, which applies to all the counties of the Commonwealth.

Our study of the questions raised on these appeals has brought to our attention something not pointed out in any of the briefs, that the General Poor Law of 1925, P. L. 762, sections 1200 et seq., authorizes poor districts to buy lands and erect hospitals for the care and treatment of indigent persons afflicted with tuberculosis. The act with which we are concerned provides for the care of all inhabitants resident within the county afflicted with this disease. It would seem that when the legislature of 1925 passed the General Poor Law it must have overlooked the fact that prior thereto it had passed the Tuberculosis Hospital Act. Under the literal terms of these two statutes, a county might have two tuberculosis hospitals, something that we think cannot have been intended. When the project of establishing a tuberculosis hospital in any county is up for consideration this should be called to public attention.

In the Northampton County proceeding, the question before us arose on the petition of the district attorney for a writ of mandamus requiring the county commissioners to provide at the expense of the county a meeting place for the advisory board, to which an answer was filed by the county commissioners setting up, among other things, that the twelfth section of the act is permissive and not mandatory. To this the district attorney demurred and the court below sustained the demurrer, entered judgment in favor of the relator and directed that a writ of peremptory mandamus issue commanding the commissioners to provide a meeting place. It appears by the record that in that county there had been a vote of the people in favor of the establishment of

the hospital under the Act of 1921 and that the court had appointed an advisory board. In view of our conclusion that the provisions of the twelfth section of the Act of 1925 are not mandatory upon the commissioners to proceed with the erection of the hospital, the mandamus requiring them to provide a meeting place for the advisory board should not have issued in view of their objection to so doing, and, therefore, the judgment of the court below in that proceeding, No. 56, January Term, 1927, is reversed, the demurrer is overruled and the writ of mandamus abated, costs to be paid by the County of Northampton.

In Montgomery County, the question arose on a petition for the appointment of an advisory board. The court of common pleas granted the prayer of the petition and appointed the board, whereupon a petition was filed by the county commissioners praying the court to vacate the appointment. While the question that the action of the county commissioners under the twelfth section of the Act of 1925 is not mandatory was not raised in that proceeding, it does disclose that there had been a vote of the citizens in favor of the establishment of a tuberculosis hospital under the Act of 1921, and therefore, for the reasons heretofore pointed out, the county commissioners were not mandatorily required to proceed with the erection of the hospital. It follows, therefore, that the order of the court appointing an advisory board was improvidently entered until the county commissioners have determined what action they will take. On their petition the court should have vacated the appointment. The order of the court in the appeal of the County of Montgomery, No. 77, January Term, 1927, is set aside, with directions to the court below to vacate the appointment of the advisory board unless it shall be made to appear that the county commissioners have determined to proceed with the erection of a tuberculosis hospital, costs to be paid by the County of Montgomery.

In Schuylkill County, the court determined that the Act of 1925 is unconstitutional. In so determining the court was in error. In that county, proceedings had been conducted under the Act of 1921 and there had been a vote of the electors in favor of the establishment of a hospital. The proceeding before the court was a petition to appoint an advisory board. The commissioners objected on the ground that the Act of 1925 is unconstitutional, but did not raise the question as to whether action by them is mandatory or permissive. The court declined to appoint the board, not for this reason, but because in its opinion the act is unconstitutional. Until the commissioners had determined to proceed with the erection of a hospital no advisory board was required. The order of the Court of Common Pleas of Schuylkill County, No. 98, January Term, 1927, refusing to appoint the advisory board, is affirmed at the cost of the County of Schuylkill.