## Young et al. v. Fetterolf et al.

*John Robert Jones* and *James S. Woods*, for plaintiffs.

*Chester D. Fetterhoof*, for defendants.

BAILEY, P. J., May 10, 1934.—The plaintiffs, in this bill in equity, pray the court that the Act of April 25, 1933, P. L. 74, 18 PS §1993, et seq., be declared void and that the defendants, their servants, agents, and employes, be perpetually enjoined from carrying into effect the provision of the act, by printing on the official ballots for use in the municipal election, and for municipal elections in subsequent years, the question provided to be submitted to the electors under sec. 4 of the statute. If this act is unconstitutional, then the prayers should both be sustained and the injunction made perpetual. If the sections under attack be not repugnant to the Constitution, then the preliminary injunction heretofore granted should be dissolved and the bill dismissed.

By decree dated September 30, 1933, we granted to the plaintiffs a preliminary injunction restraining the defendants from complying with the provisions of sec. 4. On October 23, 1933, the injunction was continued until final hearing. The testimony, taken after answer filed, reveals no material disputes of fact. ·

### Findings of fact

1. The plaintiffs, J. Elmer Young, I. G. Owens, Ross Goodman, E. R. Weber, Ray Brown, Mrs. Malva Hammond, Mrs. Nora Donelson, are citizens, residents, and taxpayers of the County of Huntingdon, Pa.

2. The defendants, C. H. Fetterolf, Jesse Wible, and George W. Kocher, are the Commissioners of the County of Huntingdon, Pa.

3. On April 25, 1933, the Governor approved an act of assembly known as Act No. 49, P. L. 74, which is entitled: "An act relating to baseball and football on Sunday; prohibiting baseball and football on Sunday during certain hours, and also during certain other hours unless the electors of a municipality are in favor of the same and, in certain cases, a license has first been secured from the municipal authorities; providing for referendums to ascertain the will of the electors, and for the enactment and repeal of licensing

ordinances and resolutions in accordance therewith; providing penalties; and repealing inconsistent laws."

4. The said act provides, inter alia, in section 4, as follows: "Section 4. Referendum; Statement of Question on Ballots.—At the municipal election in the year one thousand nine hundred and thirty-three, there shall be submitted, in the manner provided by the election laws of the Commonwealth, a question to determine the will of the electors of each municipality in this Commonwealth with respect to baseball and football games on Sunday." And, after setting forth the form of such question: "The said question shall be printed on separate official ballots, in bound form, by the county commissioners of each county, and sufficient number of ballots shall be furnished to the election officers in each election district of the county so that one ballot may be supplied to each voter at such election. In districts where voting machines are used, such question shall appear on the face of the machine where the machine is properly equipped for such purposes."

5. Said act provides, inter alia, in section 5, that such election shall be governed by the election laws of the Commonwealth and all penalties provided by said law shall apply to such election.

6. The said act provides in section 6 for future referendums whereby the will of the electors in any municipality with respect to baseball and football on Sunday may be ascertained after the year 1933, and the said question as provided in the act be submitted at any general or municipal election, and that thereupon the county commissioners shall cause such question to be submitted in the same manner as provided in the said Act of 1933.

7. Under and by the provisions of the Act of June 10, 1893, P. L. 419, sec. 1, it is provided, inter alia, that the printing of the ballots for the elections in each county of the Commonwealth and the delivery of the same to the election officers and all other expenses incurred shall be a county charge.

8. The said defendants, at the time of the filing of said bill, were about to have the said question to determine the will of the electors of each municipality in this county with respect to baseball and football games on Sunday printed on separate official ballots and to furnish a sufficient number of such ballots to the election officers of each district in the County of Huntingdon. No voting machines are used in the County of Huntingdon.

### Discussion

This statute is attacked from the following positions:

1. That it contains a delegation of lawmaking power to the electors of each municipality in the Commonwealth.

2. That it is local or special legislation.

3. That it is an amendment of section 1 of the Act of April 22, 1794, 3 Sm. L. 177, in violation of article III, section 1, of the Constitution.

4. That it is unconstitutional because the title does not give fair notice of its subject matter.

It is firmly embedded in the jurisprudence of this State that the courts will not thwart the will of the people, crystalized into law, upon the ground that the measure is inconsistent with the Constitution unless it be shown to be clearly so: Commonwealth ex rel. v. Butler, 99 Pa. 535. It was said by the court in De Walt et al. v. Bartley et al., 146 Pa. 529, 545: "Every presumption is in favor of the constitutionality of the law, and it would require a very clear case to justify us in striking it down on the ground of its unconstitutionality."

"A statute is void only when it clearly, palpably and plainly violates the

Constitution": Shaffer v. Public Service Commission et al., 268 Pa. 456; Commonwealth ex rel. v. Snyder, 279 Pa. 234; Graeff v. Schlottman et al., 287 Pa. 342; Commonwealth ex rel. v. Miller, 313 Pa. 140. It was said by Chief Justice von Moschzisker, speaking for the court, in Commonwealth v. Snyder, 279 Pa. 234, 239: "When the constitutionality of an act of assembly is attacked, it is the duty of every judge,—without regard to his opinion as to the necessity for the statute, or its wisdom,—to seek a construction which will support the legislative interpretation of the Constitution, and an act can never properly be declared void unless this is found to be impossible."

1. The act here under consideration is general in its application throughout the Commonwealth. It affects every municipality. It prohibits what is regarded as wrong with relation to the playing of football and baseball on Sunday. It commands what is regarded as right with relation to these two sports. It provides for penalties for the violation of section 2. It prescribes a method by which a fact is to be ascertained, controlling its application to any particular municipality; that is, by a vote of the electors. It provides the method by which the games are to be licensed. This statute lays down rules of action complete before it left the hands of the General Assembly. Does the fact that it leaves to the electors the determination, by their vote, as to whether or not it shall apply to any municipality destroy its constitutionality? The courts have uniformly held that it does not. The principle is thus stated: The legislature, though unauthorized to delegate power to make law, may make law to delegate power to determine a fact or state of things upon which the law makes or intends to make its action depend. In Locke's Appeal, 72 Pa. 491, 495, the leading case, Mr. Justice Agnew, speaking for the court, says this: "Each elector is to vote a ticket *for* license or *against* license. He is allowed by the law to say, 'I am for the issuing of license,' or, 'I am against the issuing of licenses,' and thus to express his judgment or opinion. But this is all he was permitted by law to do. He declared no consequences, and prescribed no rule resulting from his opinion. . . . Thus it is perfectly manifest this law was not made, pronounced or ratified by the people; and the majority vote is but an ascertainment of the public sentiment—the expression of a general opinion, which, as a fact, the legislature have made the contingency on which the law shall operate. . . . Then what did the vote decide? Clearly, not that the act should be a law or not be, for the law already existed. Indeed, it was not delegated to the people to *decide* anything. They simply declared their views or wishes, and when they did so, it was the *fiat* of the law, not their vote, which commanded licenses to be issued or not to be issued." While this case and McGonnell's License, 209 Pa. 327, have reference to intoxicating liquors, its protection of local option has been affirmed as to other questions: Commonwealth ex rel. v. Woodring, 289 Pa. 437; Baldwin Township's Annexation, 305 Pa. 490; and, as late as 1933, Clark et al., Commissioners, v. Beamish, Secretary of Com., et al., 313 Pa. 56.

The fact that, if the electors vote "yes", the proper authorities are required to pass a resolution or ordinance, or take some affirmative action pursuant to that vote, is not lawmaking. This has been the result of a number of acts of assembly whose constitutionality either remain unquestioned or has been sustained by judicial decisions. The transfer of an unexpended poor fund under the Act of May 27, 1919, P. L. 303, 62 PS §1925; the erection of a memorial hall—Act of May 2, 1929, P. L. 1278, 16 PS §592: the authorizing of voting machines—Act of April 18, 1929, P. L. 549, 25 PS §1811. The giving by the electors of the consent which calls into operation the ordaining power of municipal councils, as in the instant case, cannot be classed as a legislative act. Baldwin Township's Annexation, supra, p. 494.

It is argued, however, by the learned counsel for the plaintiffs, that a vote "yes", thus permitting of playing Sunday baseball and football between the hours of 2 p. m. and 6 p. m., in any municipality, is a repeal of the act as it existed from the time of its passage on April 25, 1933, and the time the voters expressed their will under section 6 of the act,. and that the vote, therefore being a repeal, is legislative. This argument overlooks two things. First, the definition of a law as a rule of action, clearly so defined in the cases we have hereinbefore cited, and by the common law; and, second, the meaning of repeal as used in the law: "The abrogation of one statute by another." "A repeal removes the law entirely; but, when suspended, it still exists, and has operation in every respect, except wherein it has been suspended." "A repeal puts an end to the law": 7 Words & Phrases (1st ser.), 6102. Voting "yes" certainly does not put an end to this statute, but does nothing more than control its application.

2. Is this act void because it is special or local legislation in conflict with section 7 of article III of the Constitution? The words "local" or "special" law, as used in this section and with relation to the various subjects named in its 28 paragraphs, clearly mean laws designed to operate within particular municipalities to the exclusion of others. The court, in Perkins et al. v. Philadelphia, 156 Pa. 554, 562, speaking through Mr. Justice Dean, says: "But it has been decided in case after case, since the constitution of 1874 went into effect, in positive unmistakable language, that if the act was intended to apply to but one particular city, county or township, and was not intended to and could never apply to any other, it was local and therefore unconstitutional."

To the same effect is Blankenburg v. Black, 200 Pa. 629. But the act in question, in the instant case, applies to every municipality in the Commonwealth and operates upon all of them. It is argued, however, that since, by the submission of the question of Sunday baseball and football to voters in the various municipalities, and from the result of this vote, that act which might be legal in one would be illegal in another, the statute is brought within those constitutional inhibitions as being local. The courts of this State, however, have held otherwise. It was decided that a statute, general in form and covering every county in the State, cannot be deemed local on account of varying results arising from the exercise of local option: Commonwealth ex rel. v. Woodring, supra. To the same effect is Clark et al., Commissioners, v. Beamish, Secy. of Com. et al., supra, p. 134. There is no similarity between the Act of 1933 and those statutes which were condemned by decisions in City of Scranton School District's Appeal, 113 Pa. 176 and the cases there cited, Frost v. Cherry, 122 Pa. 417, and Commonwealth v. Denworth, 145 Pa. 172. There the law was not to become effective, in any municipality, unless determined so by vote, and it was quite apparent that the legislature intended a local result. Here, however, the act, upon approval by the Governor, became effective everywhere, and its purpose is general.

3. Is this act unconstitutional as being violative of section 6 of article III? This section can be successfully invoked against a law when it purports to extend or amend a previous statute. It was said in Donohugh v. Roberts, 11 W. N. C. 186, 190: "The intention of the Constitution is that when the provisions of a former law are to be incorporated with a subsequent statute, they or the law containing them shall be re-enacted and published at length."

"But the act of 1875 manifests no legislative contemplation of the act of 1772, or design to incorporate its provisions; it is an act in certain respects inconsistent with earlier legislation, and in certain particulars, therefore, earlier legislation must give way to it": Gallagher v. MacLean et al., etc., 193 Pa. 583,

587. Section 8 of our act shows that the intention of the legislature was not only not to amend or extend the provisions of the Act of 1794, but to repeal them insofar as they might prohibit baseball and football on Sunday. This constitutional provision has reference to express amendments only. The act in question is a new law, complete in itself. Its meaning is apparent on its face and does not require the reenforcement of any other statute to give it effect. It is, therefore, not void as violative of this constitutional limitation: Searight's Estate, 163 Pa. 210, 216; Commonwealth ex rel. v. Bowman, 35 Pa. Superior Ct. 410, 414.

4. It is finally argued that the act is unconstitutional under section 3 of article III because no notice is given in the title of the fact that it amends the Sunday Law of 1794. It is sufficient answer to this contention to say that this law does not purport to be an amendment, but in its title it fairly gives notice of its contents, and that is all that is necessary: Commonwealth v. Puder, 261 Pa. 129; Commonwealth v. Blackman, 82 Pa. Superior Ct. 362. A title of a statute need name only the real subject of the legislation; it need not set forth all enactments intended to be made in regard thereto: Commonwealth ex rel. v. Snyder, supra. The title of the act here in question fully complies with the constitutional requirements. It states the one subject matter of the bill as "relating to baseball and football on Sunday"; it prohibits between certain hours unless the electors favor it; it gives notice of a license required, that it deals with referendums and for the enactment and repeal of licensing ordinances and resolutions, that it provides penalties and repeals inconsistent laws. It is obvious, therefore, that persons examining this title would have ample notice of its contents.

The right of local option when granted to the people by the General Assembly has, in past years, had such salutary results in the promotion of State welfare that it should be stricken from the body of our law, as repugnant to the Constitution, only for the gravest and clearest reasons.

### Conclusions of law

1. The Act of April 25, 1933, P. L. 74, entitled: "An act relating to football and baseball on Sunday; prohibiting baseball and football on Sunday during certain hours; and also during certain other hours unless the electors of a municipality are in favor of the same and, in certain cases, a license has first been secured from the municipal authorities; providing for referendums to ascertain the will of the electors, and for the enactment and repeal of licensing ordinances and resolutions in accordance therewith; providing penalties; and repealing inconsistent laws", is constitutional.

2. The preliminary injunction granted by our decree of September 30, 1933, should be dissolved, a permanent injunction refused, and the bill in equity dismissed.

3. The plaintiffs should pay the costs of this proceeding.

### Decree nisi

The prothonotary is hereby directed to enter the following decree nisi:

Now, May 10, 1934, upon consideration of the foregoing case, it is ordered, adjudged, and decreed as follows:

1. The preliminary injunction entered by our decree of September 30, 1933, is hereby dissolved. A permanent injunction is refused.

2. The bill in equity is hereby dismissed.

3. The plaintiffs are required to pay the cost of this proceeding.

From R. W. Williamson, Huntingdon, Pa.